JOHN J. WALTON and Others, Comprising the Firm of HUNTER, WALTON & CO., Respondents, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Appellant.

*New York city — purchase of supplies — when a supply is " needful for any particular purpose" and the contract exceeds $1,000, it must be awarded upon bids submitted after public notice — several orders each less than, but together exceeding, $1,000 are within the statute.*

The provisions of the Consolidation Act applicable to the city of New York (Laws of 1882, chap. 410, § 64), in substance requiring that municipal supplies "needful for any particular purpose," of which the several parts together shall involve an expenditure of more than $1,000, shall be furnished to the city under contracts entered into by the appropriate heads of departments and, except where otherwise provided, shall be founded upon sealed bids or proposals submitted under a duly advertised public notice, preclude a recovery against the city by persons who, upon various days during a period of more than three months, have delivered butter (for use in, and which was actually used by, a municipal public institution), not under a contract made after public letting, but merely upon separate orders signed by the purchasing agent of the

department of public charities and corrections, none of which orders exceeded $500, but which, taken together, amounted to more than $4,200.

VAN BRUNT, P. J., and McLAUGHLIN, J., dissented.

APPEAL by the defendant, The Mayor, Aldermen and Commonalty of the City of New York, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 17th day of February, 1897, upon the verdict of a jury rendered by direction of the court, and also from an order entered in said clerk's office on the 23d day of April, 1897, denying the defendant's motion for a new trial made upon the minutes.

*W. B. Crowell,* for the appellant.

*Robert M. Boyd, Jr.,* for the respondents.

INGRAHAM, J.:

This action is brought to recover for goods sold and delivered. The complaint alleges " that between the eighth day of January, 1896, and the seventeenth day of April, 1896, the plaintiffs sold, furnished and delivered to the defendant, at its request, goods, wares and merchandise at the agreed upon price of four thousand two hundred and eighty-six dollars and fifty-six cents ($4,286.56), which was the reasonable value thereof." There is no allegation that a necessity existed for the purchase or use of any of the materials, or that such a necessity was certified to by the head of the department who gave the order, or that the expenditure thereof was authorized by the common council, or that a contract for the purchase of materials was entered into by the appropriate head of the department, made in compliance with public notice duly advertised. The plaintiff's proof was that plaintiff furnished butter to the city on various dates between the 8th day of January, 1896, and the 17th day of April, 1896, aggregating $4,286.56, in lots ranging from $458.40 to $9.35. All of this butter was delivered at Ward's island for the use of the public institutions, and the lots appear to have been delivered upon several different days during the period mentioned. The butter was delivered upon order addressed to the plaintiffs, and which read as follows (except that the amount and date differed):

"Messrs. HUNTER, WALTON & Co.,

"No. 164 Chambers Street:

"Please send via East Twenty-sixth street pier, marked 'City Asylum, Hart's Island,' and charge this department.

"2,000 pounds of butter ......... ................ 18c.

"Ship Friday morning.

"Mark bills 'City Asylum, Hart's Island.'

"GEORGE W. WANMAKER,

"*Purchasing Agent, D. P. C. & C.*"

No other contract was made with the department of public chari-ties, or other representatives of the city, except by the delivery of an order in form substantially like that above described, and the delivery of the goods mentioned in each order. Each particular item furnished by the plaintiffs was ordered separately. No con-tract to furnish this butter was made after public letting to the low-est bidder. The plaintiffs furnished the butter simply as they received the orders from Wanmaker. The defendant's counsel admitted that the purchases were properly certified to by the com-missioners of public charities to the finance department, and there-upon the court directed a verdict in favor of the plaintiffs for the full amount claimed.

The defense was based upon section 64 of the Consolidation Act (Laws of 1882, chap. 410), which provides that "all contracts to be made or let for work to be done or supplies to be furnished, except as in this act otherwise provided, * * * shall be made by the appropriate heads of departments, under such regulations as now exist or shall be established by ordinances of the common council. Whenever any work is necessary to be done to com-plete or perfect a particular job, or any supply is needful for any particular purpose, which work and job is to be undertaken or supply furnished for the corporation, and the several parts of the said work or supply shall together involve the expenditure of more than one thousand dollars, the same shall be by contract, * * * unless otherwise ordered by a vote of three-fourths of the members elected to the common council; and all contracts shall be entered into by the appropriate heads of departments, and shall, except as herein otherwise provided, be founded on sealed bids or

proposals, made in compliance with public notice duly advertised in the *City Record.*"

There was no evidence offered by the plaintiff as to any particular necessity for furnishing these supplies at any particular time; nor did it appear that it was not known when the first order was given that the city would require for the use of the inmates of the public institutions the amount of butter ordered during the months of January, February, March and April, or that any necessity existed for such splitting up in separate amounts the purchase of those supplies of butter for the institutions during the months mentioned. The action was based apparently upon the assumption that the municipal corporation (the defendant), like any private corporation, incurred indebtedness for supplies furnished by reason of an order given for the supplies and an acceptance of the supplies so ordered. The rule, however, in relation to the liability of municipal corporations for contracts made by its agents, is somewhat different from that which relates to a private corporation with general authority to make contracts and employ agents whose acts are binding upon the corporation. As was said in the case of *McDonald* v. *The Mayor* (68 N. Y. 27) : " It is fundamental that those seeking to deal with a municipal corporation through its officials, must take great care to learn the nature and extent of their power and authority;" and the acts of public officials in making contracts with municipal corporations impose no liability upon the corporation, unless such acts come within the authority conferred upon them by law. If, therefore, this contract, made by the purchasing agent of the department of charities, was not authorized by this section of the Consolidation Act before cited, the making of the contract by the commissioner of charities, or his subordinates, imposed no obligation upon the city of New York. The statute provides that whenever any supply is needful for any particular purpose, and is furnished for the corporation, and the several parts of the said order or supply shall together involve the expenditure of more than $1,000, " the same shall be by contract; * * * and all contracts shall * * * be founded on sealed bids or proposals, made in compliance with public notice duly advertised in the *City Record.*"

This provision is a limitation upon the powers of the officers of a municipal corporation to make contracts which shall impose a lia-

bility upon the municipal corporation. In order that a contract for supplies furnished to the city of New York should impose a liability upon the city, the contract must be made as prescribed by the statute ; and unless a contract as prescribed by the statute is made, the municipal corporation has not contracted, and it is not liable for acts done by its officers in excess of the authority conferred upon them by law. As before stated, the provision is a limitation upon the power of the department or its officers to make a contract binding upon the municipal corporation ; and a contract for any supplies needful for any particular purpose furnished for the corporation, which involves the expenditure of more than $1,000, must be founded on sealed bids or proposals, and in compliance with public notice duly advertised in the *City Record.* No contract made other than in the method prescribed by this section of the Consolidation Act is a contract of the defendant.

It is conceded that this butter was not furnished under such a contract. It was ordered from day to day, and each separate order was for less than $1,000, but it was all of material of the same character, and the several parts together involved the expenditure of more than $1,000. Counsel for the plaintiff claims that this supply was not for a particular purpose, but it certainly was required by the city to feed the inmates in the public institutions. If the words " for any particular purpose " do not include supplies necessary for the support of those whom the city is bound to support, I cannot understand what these words mean. The section can have no other meaning than to provide that, when supplies are to be purchased by a department of the city government for the use of the city, or to fulfill a duty imposed upon the city by law, and when the aggregate amount of supplies needed for such purposes exceeds the sum of $1,000, they must be purchased as provided for by this section of the Consolidation Act. But if a department of the city government could order without public letting the supplies necessary for the department for each day, because each order did not exceed $1,000, this provision would be nullified, as it is hardly probable that any department uses of any one particular material a greater amount in each day than could be purchased for the sum of $1,000, and this provision would evidently be of no value if a department could order at its own will each day $999 worth of each par-

ticular kind of material.    Here it appears that this department expended, in a little over three months, upwards of $4,200 for butter alone.    It also had to supply the meat, bread and other articles of food for the inmates of these asylums, clothing and fuel, and other articles necessary for the maintenance of the institutions.    If the plaintiff's contention is right, every particle of supplies needed for all of these institutions could have been ordered by the commissioner at such price as he pleased, upon such terms as he pleased, of such quality as he pleased, without competition, without public letting, in violation of the Consolidation Act, simply by placing the articles needed in several orders, seeing to it that no one order exceeded $1,000.    That it was this method which the statute was intended to prevent is clear; and yet if, upon the allegation in the complaint and the proof before the court below, this contract imposed any obligation upon the city of New York, I can see no reason why the commissioner would not have had power to procure all the supplies needed for his department in the same way.    But it is also claimed that the city is bound, because the supplies were furnished to the city and were used by it without objection.    As stated by counsel for the plaintiff, "the city having accepted and used these goods, must pay their fair value."    If the officer of this department was without power to make a contract for these supplies, it is difficult to see how he could impose a liability on the city by receiving the supplies when furnished under the void contract.    The claim, however, is expressly met and negatived by the case of *McDonald* v. *The Mayor* (*supra*), where it is said: "But the main reliance of the plaintiff is upon the proposition that the defendant having appropriated the materials of the plaintiff and used them, is bound to deal justly and to pay him the value of them;" and after an examination of the authorities upon the subject, the court in conclusion states: "The statute may not be carried further than its intention, certainly not further than its letter.    Its purpose is to forbid and prevent the making of contracts by unauthorized official agents for supplies for the use of the corporation.    This opinion goes no further than to hold that where a person makes a contract with the city of New York for supplies to it without the requirements of the charter being observed, he may not recover the value

thereof upon an implied liability." See, also, *Smith* v. *City of Newburgh* (77 N. Y. 136), in which it is said : " A subsequent ratification cannot make valid an unlawful act without the scope of corporate authority. An absolute excess of authority by the officers of a corporation in violation of law cannot be upheld ; and where the officers of such a body fail to pursue the strict requirements of a statutory enactment under which they are acting, the corporation is not bound. In such cases the statute must be strictly followed ; and a person who deals with a municipal body is obliged to see that its charter has been fully complied with. When this is not done, no subsequent act can make the contract effective." It may be that for some reason not disclosed on the record the contracts, although not complying with the provisions of the Consolidation Act, before cited, were legal. We may not go outside of the record to speculate as to what necessity existed. It is sufficient in the decision of this case to say that upon the record the case appears to be for supplies furnished for a particular purpose ; that such supplies aggregated more than \$1,000 ; that a contract made without a public letting imposed no liability upon the city, and that no officer of the city, either by making such a contract or by accepting goods furnished under such a void contract, imposed any obligation upon the city. For these reasons the judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

BARRETT and RUMSEY, JJ., concurred ; VAN BRUNT, P. J., and McLAUGHLIN, J., dissented.

McLAUGHLIN, J. (dissenting) :

I think this judgment should be affirmed. It is conceded that the butter for which a recovery was had was actually delivered to and used by the defendant, and was of the value claimed. The only objection made by the defendant upon the trial to the plaintiff's right to recover was, that the butter was not furnished in accordance with the provisions of section 64 of the Consolidation Act, as amended by chapter 327 of the Laws of 1893. This statute was designed to insure economy on the part of the city, and to prevent favoritism, fraud and corruption by public officials. This was the purpose and only purpose of the statute. The butter was

furnished upon different orders and at different times, and not one of them called for more than $500 in value. No contract was ever made for any particular quantity — an order was sent and the amount called for by the order was shipped. The defendant was under no obligation at any time to accept butter to the value of $1,000, and the plaintiffs were under no obligation to furnish any greater quantity of butter than that called for by each order at the time sent.

Under such circumstances it cannot be said that this butter was furnished "for any particular purpose" within the true intent and meaning of the statute referred to. (*Swift* v. *The Mayor*, 83 N. Y. 529.) This statute was never designed to enable the city to do an act which, if done by an individual, would be dishonest.

The defendant has received and used the plaintiffs' property; it has not paid for it; it concedes that it was of the value claimed, and it also appears that a necessity existed for its use. It is not even suggested that the butter was ordered, furnished or used with the intent on the part of any one to evade the statute.

The question involved upon this appeal is to be disposed of, it seems to us, in the same manner as though each purchase of butter had been made from a different individual and without any knowledge upon the part of the various sellers that the purchases had been made of other parties; because the infirmity in the purchase depends upon the want of power in the department to make it, and the question as to the want of power is not affected by the fact that the separate purchases were made from the same individual. Each of these purchases was as distinct as though it had been made from a different party; each had no relation to the others; nor is there anything which connected them together as a continuous transaction. If these distinct purchases had been made from separate sellers there would not seem to be any violation of the statute, interpret it as broadly as you may.

We think the judgment is right and should be affirmed.

Van Brunt, P. J., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.