(34 App. Div. 98.)

KOELESCH et al. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. November 3, 1898.)

CITY OF NEW YORK—LIABILITY UNDER CONSOLIDATION ACT.
    Where the mayor and common council of Long Island City neglected
    their legal duty to provide money for the payment of certain warrants-
    drawn against the city until by operation of Laws 1897, c. 378, the city
    of New York had succeeded to all the rights and powers and assumed
    all the obligations of the said Long Island City, on the refusal of the-
    comptroller of New York City to pay the warrants the owners are entitled
    to recover the amount thereof in an action against it.

Appeal from special term, Queens county.

Action by Adolph Koelesch and another against the city of New
York for the amount of warrants in their favor against Long Island
City. From a judgment for plaintiffs, defendant appeals. Af-
firmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT,
HATCH, and WOODWARD, JJ.

Almet F. Jenks, for appellant.
Hector M. Hitchings, for respondents.

WOODWARD, J. We are unable to discover any good reason for
disturbing the judgment entered in the above-entitled action against
the defendant. The trial court finds that the "plaintiffs, at the
times mentioned in the complaint, were and are co-partners; that
the defendant the city of New York is a domestic municipal corpora-
tion, and that up to January 1, 1898, defendant Long Island City
was a domestic municipal corporation; that during the year 1897
the general improvement commission of Long Island City was a duly-
organized board of said Long Island City, and that a majority of such
board had full power and authority to purchase supplies for the work
of said board, and, with the approval of the mayor, to issue warrants-
upon the city treasurer of Long Island City in payment thereof; that
prior to the 31st day of December, 1897, said general improvement
commission purchased of the plaintiffs herein certain supplies of the-
value of $279.70, in payment for which said board did, on said 31st
day of December, 1897, duly issue to the plaintiffs four certain war-
rants upon said city treasurer of Long Island City for said sum of
$279.70, which said warrants were on the same day duly approved in
writing by Patrick J. Gleason, mayor of said city of Long Island City,
and were then duly delivered to these plaintiffs; that said warrants-
were not paid, nor was any part thereof; that on January 1, 1898, the-

defendant the city of New York, by virtue of chapter 378 of the Laws of 1897, became the successor corporation in law and in fact of the said corporation the city of Long Island City and of the general improvement commission of Long Island City, with all their lawful rights and powers, and subject to all their lawful obligations; that more than thirty days elapsed after the filing with the comptroller of said city of New York of a proper claim for the amount of said warrants before this action was brought"; and "that the city of New York is liable for the payment of said warrants."

There is no question as to the facts as found by the court in so far as they relate to the furnishing of the articles or the issuing of the warrants; but it is urged that, as the fund out of which the improvements were to be paid, was exhausted, the plaintiffs have no right of action against the city of New York, but that their remedy was by way of mandamus to compel the officials of Long Island City to procure the money necessary for the payment of the warrants.

It will not be disputed, as a general proposition, that where a public improvement is made under the auspices of a municipal corporation, where the fund for the payment of the same is to be derived from an assessment against the property benefited, no primary obligation against the municipality is created, and the remedy of the aggrieved party is by mandamus to compel the authorities of such municipality to proceed to levy and collect the fund as provided by law. It is equally well settled, however, that, where the municipality has neglected to perform the duties imposed by law, the plaintiff may not be unreasonably deprived of his compensation, but may proceed against the municipality, which is ultimately responsible for the debt. "In making contracts with others in execution of the powers bestowed upon it," say the court in the case of Beard v. City of Brooklyn, 31 Barb. 142, at page 151, "no liability will be created, so long as it acts within the scope of its authority, and with usual and reasonable diligence. But it cannot with impunity enter into contracts with individuals, by which they are induced to expend their labor and substance in works of public improvement, and then refuse or negligently omit to employ the means given it by law for their recompense and reimbursement." The same doctrine is asserted in the case of Baldwin v. City of Oswego, *41 N. Y. 132, the court relying upon the case of Cumming v. City of Brooklyn, 11 Paige, 596. In that case it "was decided," say the court, "after an elaborate argument, and by a well-considered opinion, that in a case of this kind, where the officers of a corporation had unreasonably neglected to compel a proper assessment to be made, the plaintiff, who had performed the labor under a contract with the corporation, could compel payment by an action against it. The general fund, it was said, could be reimbursed out of the proceeds of the assessment when subsequently made. I am disposed to regard this judgment, which was pronounced in the highest court of general equity jurisdiction, twenty years ago, and which appears to have been acquiesced in, as an authentic precedent for the determination of the present case; and to hold that the defendant is responsible for the amount due the plaintiff on account of the neglect of its officers to enforce the legal instrumentalities provided for en-

forcing the payment against the parties primarily chargeable with such payment."

In the case of Buck v. City of Lockport, 6 Lans. 251, the court say: "In respect to such [municipal] corporations the rule extends no further than to exempt them from liability to actions for the recovery of such claims primarily or in the first instance. The law presumes, in respect to all such claims, that they are contracted or created in reference to the power of the corporation, and the ways and means at its command of obtaining funds for payment, and will not allow such bodies to be harassed by actions unless they refuse or fail to exercise their power, or to use the means at their command to enable them to make payment and satisfaction in the prescribed form. But if they refuse or neglect to put the proper machinery in motion to raise the necessary funds, or to put the claims presented in proper shape for liquidation and payment, then the law gives the creditor his remedy by action to compel payment." So, in the case of Dannat v. Mayor, etc., 66 N. Y. 585, it was said: "But if the city had improperly omitted to provide the funds in the cases in which it is required by the statute to do so, and the chamberlain refused to pay the draft on that account, then the city could probably be sued, for then it would be in default." This is also asserted in the case of Swift v. Mayor, etc., 83 N. Y. 528, and is clearly the law of this state.

In the case at bar the common council of Long Island City, acting with the mayor, was authorized to issue bonds on the requisition of the improvement commission for the payment of the expenses of the public works authorized to be constructed in an amount not exceeding $1,500,000, and of the bonds so authorized $1,255,000 were issued. The act provided that these bonds should be sold at par, in series of not to exceed $50,000 each, and that the money realized upon these bonds should be deposited with the city treasurer, and credited to the fund for the erection of public works; and that "all claims, expenses and charges of every kind connected with the making of any of the aforesaid improvements, including damages for lands and buildings taken for streets, avenues and public places, shall be paid by the said city treasurer and receiver out of the moneys received by him as aforesaid, but no money shall be paid out except upon the requisition of the said general improvement commission, approved by the mayor." The act further provides for assessments against benefited property for some parts of the improvements, but the intent of the act is, clearly, that the municipality shall provide for the immediate payment of all the expenses by the issue of such bonds as shall become necessary, without waiting for the collection of the special assessments. The general improvement commissioners, acting upon this idea, issued to the plaintiffs warrants upon the city treasurer of Long Island City on the 31st day of December, 1897; and it became the duty of the common council, in conjunction with the mayor, to provide the money for the payment of these warrants. This duty, it appears, was neglected; and on the following day, by operation of chapter 378 of the Laws of 1897, the city of New York succeeded to all of the rights and powers, and assumed all of the obligations, of the city of Long Island City and of the general improvement commission

of Long Island City. Greater New York Charter, c. 1, § 1. All of the officers of the city of Long Island City were legislated out of office. The plaintiffs could not, therefore, proceed by mandamus to compel the officers of the former corporation to perform the duties pointed out by law. The municipality of Long Island City was, therefore, in default, and the city of New York, as the successor of Long Island City, became liable for the payment of the warrants issued to these plaintiffs; and, upon the refusal of the comptroller of the city of New York to pay these warrants, the plaintiffs had a cause of action for the recovery of the debt. To hold otherwise is to deprive the plaintiffs of all remedy, and to relieve the city of New York of one of the obligations which it assumed in becoming the successor of the city of Long Island City and the other corporations which were absorbed in creating the Greater New York. Indeed, while it does not seem to be necessary to discuss the question, it may be doubtful if the legislature had the power to pass an act which should operate to deny to the plaintiffs in this action the right to recover for the goods which they have supplied to a constituent element of the city of New York. Long Island City, through its commission for the construction of public works, was authorized to contract the indebtedness now under consideration. There is no doubt that the plaintiffs, under the circumstances of this case, would have had a remedy, either by mandamus to compel the officers of the municipality to act, or by an action upon the case, if the city of Long Island City had continued in existence. The legislature having taken away the possibility of a remedy by way of a mandamus by repealing the laws under which the officers were empowered to act, there ought not to be any question as to the right of these plaintiffs to an action against the successor of the municipality thus legislated out of existence. If there is, then there is a violation of the obligation of the contract on the part of the city of Long Island City; and the legislature is inhibited the power to pass any "law impairing the obligation of contracts." Const. U. S. art. 1, § 10. The obligation of the contract between the plaintiffs and the defendant is the obligation to pay the amount due for the supplies which the plaintiffs have furnished (Sturges v. Crowninshield, 4 Wheat. 122; Kent, Comm. 420), and it is no part of the duty of the courts to so construe the law as to bring it into conflict with the constitution, either of the state or of the United States.

The judgment appealed from should be affirmed, with costs. All concur.