(25 Misc. Rep. 250.)

## HOLDER v. CITY OF YONKERS.

(Supreme Court, Trial Term, Westchester County. November, 1898.)

1. MUNICIPAL CORPORATIONS—LEASE—VALIDITY—EVIDENCE.
   Where a lease running to a city is executed by the proper officers under the city's seal, and is accompanied by the formal affidavit required by the recording act, it is presumptive evidence of its own validity.

2. SAME—POWERS—PARKS.
   A city has no power to take a lease of land for park purposes, in the absence of statute.

3. SAME.
   Power to take a lease of land for park purposes is not conferred by Yonkers City Charter, tit. 7, § 2, authorizing the acquisition of lands for park purposes, as local improvements, by special assessment.

4. SAME.
   Nor by section 11, tit. 6, Yonkers City Charter, authorizing the purchase or lease of lands for city purposes.

Action by Francis T. Holder against the city of Yonkers. Judgment for defendant.

Joseph F. Daly, for plaintiff.

James M. Hunt, for defendant.

JOHNSON, J. This is an action to recover the money stipulated to be paid as rent by an instrument annexed to the complaint. The instrument, purporting to be a lease, is in due form, and, according to its letter, the defendant is clearly liable to the plaintiff for 1½ year's rent, amounting to $2,250. The paper is executed by the mayor and city clerk, and is under the city's seal. The city now contends that the formal and necessary authority by which alone those officers could make such a contract was not given. I decide against the city on that point. It seems to me that the formal resolutions and proceedings were sufficient; besides, ratification and occupation under the lease are clearly shown. The paper itself, including the formal and usual affidavit or proof required by the recording act, was presumptive proof of its own validity. Jourdan v. Railroad Co., 115 N. Y. 380, 384, 385, 22 N. E. 153; Trustees v. McKechnie, 90 N. Y. 618.

That brings me to the more difficult question in the case. The lease expressly provides that the land demised "shall be used only for the purpose of a public park in the city of Yonkers," and contains a covenant that the city shall pay to the landlord—that is, to the plaintiff—the annual rental of $1,500. The remaining question is, had the city of Yonkers the power to make such a contract, its legislative and administrative officers all properly co-operating so to do? It is well settled that cities are corporations, having only such powers as are expressly granted or are fairly implied, or which are essential to the declared objects of the corporation. 1 Dill. Mun. Corp. § 89. We have national parks, county, city, and village parks, and in some cases parks built and paid for at the expense of and for a locality specially bounded and defined for that purpose. Considerable research, previously made, has convinced me that all such parks were acquired and are maintained under express provi-

sions of statute law. Probably among the oldest parks in this country are the public squares or parks, which are very common in many states, at the county court house and around the public county buildings. But, even for such public squares, statutory authority seems to have been expressly given in this state. 1 Rev. St. p. 364; 1 Rev. St. (Edm. Ed.) p. 371, § 1. I doubt whether a case can be found where a municipal corporation has acquired, purchased, or maintained a public park or square other than under statutory authority. I think it must be held that the city of Yonkers had no power to lease the land in question for park purposes, or to make the contract here in question, unless such power affirmatively appears. Some of the cases cited to sustain the contrary rule arose on a question of constitutional, rather than of statute, law. There can be no question but that the building of a bridge, or the acquiring or maintaining of a park, are so far city purposes that a statute authorizing a city to build a bridge or acquire a park is constitutional. It certainly would be competent for the legislature to authorize the city of Yonkers to acquire this or any other land for park purposes, and probably to pay the fair value of the use already had of this land. But none of the authorities cited go to the extent of holding that any power to acquire or maintain parks is inherent or exists in any city, apart from the enabling power of statute law.

I am referred to section 2 of title 7 of the charter of the city of Yonkers as authorizing this lease. I do not understand that public parks are mentioned or referred to in the charter except in that or the connected sections. Those sections certainly do not authorize the acquisition of lands for park purposes except as local improvements and by the power of local assessment. I do not find in that title any power to acquire any land for park purposes in any other way, and certainly no power to so acquire by purchase or lease, at the expense of the entire city and as a general charge. That system of statute law seems to be practically like that discussed in Beard v. City of Brooklyn, 31 Barb. 142; in Richardson v. Same, 34 Barb. 577; and in Reilly v. City of Albany, 40 Hun, 413. To my view, the provisions of title 7 do not contemplate that the city of Yonkers shall purchase or acquire lands for park purposes at the general expense and as a general charge; and, in case a park were acquired under that title, I think it clear that the city could only be held liable for negligence or misfeasance in the performance of its duties in such a proceeding as such duties are there stated and defined. Beard v. City of Brooklyn, supra. It may well be that if the city, proceeding under the provisions of title 7, would have become obligated as a corporation to pay for a park so acquired, the principle involved by the learned counsel for the plaintiff would apply, and that the severe rule, held as to ultra vires contracts, would not be applied in this case. But, as I have said, I find nothing in the charter of the city of Yonkers authorizing it to be or become indebted by any proceedings or in any manner for land acquired or taken for the purposes of a public park. The United States courts have stated a rule as to municipal corpora-

tions which places them largely in the position of private corporations or of individuals as towards officers or agents. But the rule of the United States courts as to the liability of municipal corporations has not been adopted by the courts of this state. Walton v. City of New York, 26 App. Div. 76, 49 N. Y. Supp. 615; McDonald v. Mayor, etc., 68 N. Y. 23; Donovan v. Mayor, etc., 33 N. Y. 291; Lyddy v. Long Island City, 104 N. Y. 218, 10 N. E. 155.

The provision contained in section 11 of title 6, authorizing the city to purchase or lease lands for city purposes, does not help the plaintiff. If the city could purchase lands for park purposes, it could doubtless lease them, and I lay no stress upon the fact that the money here in suit is claimed under a lease, and not upon a sale of lands. I think that general power contained in section 11 must be limited to the purposes stated in other parts of the charter, and that such power is given merely as a means of executing the power otherwise and elsewhere granted. I find that the contract in suit was beyond the power of the defendant corporation, and that the defendant is entitled to judgment.

Judgment for defendant.