(69 App. Div. 400.)

PEOPLE ex rel. GLEASON v. SCANNELL, Fire Com'r.

(Supreme Court, Appellate Division, Second Department.   March 7, 1902.)

1. MUNICIPAL CORPORATIONS—FIREMEN—APPOINTMENT—ILLEGALITY — SALARY.
        Laws 1890, c. 232, §§ 4, 7, as amended by Laws 1894, c. 122, authorize the fire commissioners of Long Island City to expend for the support and maintenance of the department a sum not exceeding $40,000 per year. Laws 1883, c. 354, as amended by Laws 1894, cc. 354, 681, prohibits the payment for salary to any fireman who has not been appointed according to the civil service regulations. For 1897 the city voted to expend $40,-000 for the fire department. The commissioners appointed 10 men in violation of the civil service regulations. These appointees held office until November, 1897, and drew their salaries. *Held*. that the salaries so paid should not be regarded as having been paid from the department fund, and therefore the commissioners would be authorized to make appointments according to the civil service rules, though the salaries of these latter appointees, when added to the salaries of the former, would exceed $40,000.

2. SAME—CONTRACTS—MANNER OF AWARDING—NECESSITY OF COMPLYING WITH STATUTORY PROVISIONS.
        Under Laws 1871, c. 461, tit. 11, § 29, providing that all work done and supplies furnished Long Island City involving an expenditure of more

than $100 shall be by contract, on bids, on public notice, awarded to the lowest bidder, the fire commissioners cannot make contracts involving an expenditure of more than $100 without competitive bids, so as to make a valid charge, either under the contract or upon a quantum meruit, on the fund provided for the fire department by Laws 1890, c. 232, as. amended by Laws 1894, c. 122.

8. SAME—PRESUMPTION OF GOOD FAITH—EVIDENCE.

The fire commissioners of Long Island City, previously to its merger in Greater New York, removed 10 men belonging to the fire department who had been improperly appointed, and thereupon appointed 74 men from the certified list of the civil service commissioners. After the merger the general fire department dismissed a number of the men so appointed, and sent a number of substitutes. The growth of Long Island City up to the time of its merger and the necessities of the department were not shown. A petition for a writ of mandamus compelling reinstatement of a fireman dismissed by the department of the greater city alleged that the department of Long Island City was no larger than was required. *Held*, that the presumption that the officials of the fire department of Long Island City discharged their duties properly was not overcome by evidence sufficient to authorize a finding that the appointments by that department were not made in good faith, but to embarrass the department of the greater city.

Appeal from trial term, Queens county.

Application for a writ of mandamus by the people, on the relation of Mortimer F. Gleason, against John J. Scannell, as fire commissioner of the city of New York. From a judgment in favor of the relator, and from a final order for a peremptory writ of mandamus, defendant appeals. Affirmed.

The opinion of GARRETSON, J., referred to, is as follows:

The final determination of this proceeding is dependent upon the legal status on November 17, 1897, of the fund allowed for the maintenance of the fire department of Long Island City for the year 1897, when the relator and others were appointed to the position of firemen in such department. Upon the facts as shown upon the trial of the issues raised by the return to the alternative writ of mandamus, the qualifications of the relator, and his eligibility to appointment under the civil service law, and the regulations of Long Island City adopted in pursuance thereof, were clearly established, and were not questioned; nor have they been disputed upon the argument. The proof of payments made from the fund, and of liabilities chargeable thereto, would, however, seem to show that such appointment was in violation of sections 4 and 7 of chapter 232 of the Laws of 1890, as amended by chapter 122 of the Laws of 1894, for that the liabilities of the department for that year would have thus been created in excess of the limit of $40,000. The relator has challenged the legality of certain of such payments, and has charged that they were made in violation of express prohibition of law; and, this challenge having been accepted by the respondent, the only questions raised and contested by the parties have thus been presented for my more careful consideration and judgment. The impression derived upon the trial, and in accordance with which a verdict for the relator was directed, remains unchanged in substantially all essential particulars, and is founded upon the reasons hereinafter fully set forth.

Ten men were appointed as firemen at the close of the year 1896, who were paid from the fund, in the aggregate, the sum of $4,165.08. They had not complied with the civil service regulations, and, having been summarily removed, were refused reinstatement by the court upon the ground that their appointment was for that reason invalid. People v. Gleason, 32 App. Div. 357, 53 N. Y. Supp. 7. The moneys paid to them as for salaries were not properly chargeable against the fund. Such payments were made in contravention of the express prohibition of the civil service law (chapter 354, Laws 1883,

as amended by chapters 354, 681, § 7, Laws 1894). An ample remedy being given against the municipal officers responsible for the unlawful payments, it must be presumed that the city has availed itself of such remedy, and that no deficit in the fund to that extent exists. Id.; Koelesch v. City of New York, 34 App. Div. 98, 54 N. Y. Supp. 110.

It is urged by the respondent's counsel that the ten men appointed in 1896, while acting as firemen, were de facto incumbents of the positions held by them, and that the payments made to them must be held to have been properly made by the city, as against the relator. The cases cited by the counsel (Terhune v. Mayor, etc., 88 N. Y. 247; Dolan v. Same, 68 N. Y. 274, 23 Am. Rep. 168; McVeany v. Same, 80 N. Y. 185, 36 Am. Rep. 600; Demarest v. Same, 147 N. Y. 203, 41 N. E. 405) do not sustain this contention, and are not applicable. They were actions brought by an officer who had been unlawfully removed or excluded from his office, and was afterward adjudged to be entitled thereto, who sought to recover compensation for the period during which he was deprived of his office; and it was held that the compensation having been paid to another, who held de facto during the interim, the city was not liable, because the payment to the de facto officer was properly made, and that the plaintiff must seek recovery from him. None of the ten men referred to was holding in place of the relator. The inquiry in this proceeding is as to the legal status of the fund at the time of relator's appointment, and the question of the validity of his appointment necessarily involves the determination of the legality of payments made therefrom. Moneys paid thereout, or sought to be made chargeable thereto, in direct violation of an express prohibition of statute, must be regarded, for the purposes of this proceeding, as still in the fund.

The relator has also taken the position that the payments made to Fabric Fire Hose Company, D. Schultze, Astoria Machine Works, William J. McKinney, F. X. Fallon & Co., Thomas P. Hunt, and East River Gas Company were also made in violation of law, and are not chargeable against the fund. They are each in excess of $100. It was provided by the Revised Charter of Long Island City as follows: "All work to be done, and all supplies to be furnished for the corporation, involving an expenditure of more than one hundred dollars, shall be by contract founded on sealed bids, or on proposals made in compliance with public notice for the full period of ten days, and all such contracts shall be given to the lowest responsible bidder giving adequate security. All such bids or proposals shall be opened by the heads of departments advertising for them, in the presence of the mayor, and such of the parties making them as may desire to be present." Laws 1871, c. 461, tit. 11, § 29. It has been neither claimed nor proven that the provisions of the section quoted had been complied with preliminarily to the procuring of the work to be done and of the supplies to be furnished which were the subject of the several payments last mentioned. The respondent has endeavored to sustain these payments notwithstanding, upon the ground that the bills therefor were incurred in good faith, and that to have refused to pay them would have been bad in morals. He also asserts that they were recoverable in an action upon a quantum meruit, and cites, among other inapplicable authorities, Leonard v. Long Island City, 47 N. Y. St. Rep. 761, 20 N. Y. Supp. 26. That case arose upon a demurrer to a complaint, and section 29 of title 11 of the Revised Charter of Long Island City was not considered, and was presumably regarded as having been complied with. The learned justice who wrote the opinion cites as controlling authority Kramrath v. City of Albany, 127 N. Y. 575, 28 N. E. 400, wherein the rule is recognized and stated to be: "Where the mode of contracting is limited and provided for by statute, an implied contract cannot be raised. But a corporation, like an individual, is liable upon a quantum meruit, where it has enjoyed the benefit of the work performed or goods purchased, when no statute forbids or limits its power to make a contract therefor." This rule, and its correlative, that when a contract for work or the purchase of goods has not been made by public letting, as required by statute, the city is not liable for the work or the goods, and no subsequent ratification is effective to make it so, have also been applied in McDonald v. Mayor, etc., 68 N. Y. 23, 23 Am. Rep. 144; Smith v.

City of Newburg, 77 N. Y. 130; Swift v. Mayor, etc., 83 N. Y. 528; and Walton v. City of New York, 26 App. Div. 76, 49 N. Y. Supp. 615. For the purposes of this proceeding, all of the payments herein mentioned must be regarded as having been made in violation of law, and upon invalid claims against Long Island City, and should not be considered as effective to reduce the amount to the credit of the fund provided for the maintenance of the fire department of said city in the year 1897.

The defendant's motion to set aside the verdict is denied, and judgment is directed to be entered thereon in favor of the relator, with costs.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

James McKeen, for appellant.

W. W. McFarland (Nelson Smith, on the brief), for respondent.

GOODRICH, P. J. We should content ourselves with an affirmance of the judgment on the opinion of Mr. Justice GARRETSON, hereto appended, except for the fact that the learned corporation counsel raised on the argument of the appeal a new point for reversal, which does not appear to have been presented at the trial. He contended that "the attempted appointments of members of the fire department of Long Island City on and after November 24, 1897, were not made in good faith, but were intended to embarrass and control the management of the fire department of the Greater City of New York, and were therefore illegal and void." The facts are not in dispute. On November 17, 1897, 10 members of the fire department of Long Island City were dismissed for alleged illegality of appointment, made in violation and contravention of the civil service regulations governing Long Island City. On the same day the fire commissioners passed a resolution requesting the board of civil service examiners forthwith to hold competitive examinations for merit and fitness for various positions in the fire department. In response the civil service commissioners on November 24th, November 26th, November 29th, and December 27th presented certified eligible lists for such positions; and all the persons thus certified, 74 in number, were immediately appointed members of the fire department. Six new engine companies, three hose companies, and three truck companies were established. Eighty men were assigned thereto, and the compensation of the appointees fixed from and after December 24th at certain specified rates. The corporation counsel contends that this was virtually the creation of a new fire department for Long Island City just previously to the time when that municipality was merged in Greater New York. As the point was not made at the trial, we have nothing in the record other than the simple facts above stated, upon which we are asked to infer an intention on the part of the fire department commissioners to embarrass the new administration. As 10 firemen were dismissed on concededly proper grounds, we may assume that it was necessary immediately to appoint others in their places. If it were necessary, we might assume that the relator was one of the very persons actually appointed in the place of some one thus dismissed. The growth of Long Island City up to that time is not proven, the necessities of the department are not shown, as such facts might have been pro-

duced by the relator, if the point in question had been raised at the trial. It was also alleged in the petition, and not disputed, that the number of men (including the relator and his associates) in the employment of the department was no greater than was actually required for the operation of the department. This view receives emphasis from the fact that it was alleged in the moving papers, and was not disputed, that, immediately upon the removal of the relator and his associates, 53 firemen from the borough of Brooklyn were sent by the fire department of the greater city to the borough of Queens, and substituted in their places, to do the work of the fire department in that borough, and that the combined salaries of these new men were greater than those of the relator and his associates. This furnishes strong evidence that the appointment of the relator and his associates by the fire department of Long Island City was not only not intended to embarrass the new municipality, but that, in the judgment of the latter's fire department, there was actual necessity for the entire force as it was constituted when the new city absorbed Long Island City. Besides, we cannot gratuitously assume evil intentions on the part of the fire commissioners of Long Island City, where the presumption that public officials properly discharge their duty holds in law until the contrary is shown.

The charter of Long Island City contained no limitation of the number of firemen to be appointed, other than that which was imposed by the limitation of the amount of the annual appropriation of $40,000 for the expenses of the department. If we should reverse the judgment, we would practically hold that, if dishonest officials had entirely depleted the fire department fund, ipso facto the members of the department would be removed from office, or compelled to serve without compensation. We are not prepared to take such a position; and therefore we approve the reasoning of the opinion of Mr. Justice GARRETSON, and affirm the judgment, with $50 costs and disbursements. All concur, except JENKS, J., taking no part.