THE ASTORIA HEIGHTS LAND COMPANY, in Behalf of Itself and Such Other Persons and Corporations Similarly Situated as Choose to Come in and Contribute to the Expenses of this Action, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

*Assessment for an improvement contracted for by commissioners appointed by a special act — the municipality in which the work is done is not liable for its non-completion — assessment for the cost of such work — obligation assumed by the commissioners — obligation of the city of New York, to which their duty descended — a party assessed is not entitled to have the assessment vacated.*

Chapter 514 of the Laws of 1890 provided for the appointment by the mayor of Long Island City of three commissioners, called "Grand avenue improvement commissioners," who were directed and empowered to pave and otherwise improve a portion of Grand avenue. The expenses attending the improvement were to be met in the first instance by the issuance by the commissioners of certificates of indebtedness which should not exceed in amount the par value of $200,000. These certificates were to be signed by the commissioners or a majority of them, and countersigned by the treasurer of Long Island City.

It was provided that they might be issued directly in payment for such improvements and expenses, or be sold or negotiated to obtain money to pay therefor or to pay interest on the outstanding certificates, and that all money realized from the sale thereof should be forthwith deposited with the treasurer and receiver of taxes of the city.

The act provided for the levying and collection of an assessment on the property benefited, "so that the entire costs, charges and expenses of such opening, widening, straightening and improvement may be defrayed out of and with the proceeds of such assessment, without any cost or expense to the city at large."

The act further declared that "all moneys received by said treasurer in payment of such assessments, or interest thereon, shall be placed to the credit of the fund to be known as the 'Grand avenue and Main street improvement fund,' and shall be kept separate and apart from all other moneys in his hands; and no part thereof shall ever be expended by him except in payment of the interest or for the purchase or redemption of the principal of said Grand avenue and Main street improvement certificates."

It also provided that, in the event of a failure to pay the assessment within a certain time, the land should be sold by the treasurer and receiver of taxes of the city.

Pursuant to the provisions of the act, the improvement commissioners entered into a single contract for the entire work and issued for value the full amount of certificates of indebtedness authorized by the act. The commissioners of estimate and assessment made assessments for benefits and awards for damages, and their action was confirmed by the court. The contractor proceeded with the prosecution of the work until 1893, when, the certificates of indebtedness

and their proceeds having been exhausted, he stopped by direction of the improvement commissioners, leaving a considerable portion of the work unfinished.

In 1893 an act was passed creating a general improvement commission for Long Island City, providing that all special improvement commissioners who had not completed their duties on or before December 1, 1893, should be abolished on that day and that the improvements left unfinished by them should be completed by the general improvement commission. It was provided that the necessary funds should be obtained by the use of Long Island City bonds, issued on the requisition of the general improvement commission, and that as the work was completed the cost thereof should be assessed upon the lands benefited.

The general improvement commission made no attempt to complete the improvement of Grand avenue nor did the property owners take any steps to compel them to do so.

*Held,* that no liability was imposed upon Long Island City by anything done under the act of 1890, or by the failure of the Grand avenue improvement commissioners to complete the improvements authorized by the act, for the reason that such act granted no power to the city and imposed no duty upon it;

That there was no contract with the property owners on Grand avenue that the cost of the improvement should not exceed the amount of the assessments, or that the entire work should be completed with the certificates of indebtedness which the improvement commissioners were authorized to issue;

That if there was any contract made with the property owners it was made by the improvement commissioners, and that the only contract obligation which they assumed was to honestly and diligently discharge the duties imposed upon them by the act of 1890;

That the city of New York was, under chapter 378 of the Laws of 1897, liable for any damages resulting from the failure of the general improvement commission, created by the act of 1893, or from its own failure to complete the Grand avenue improvement;

That this failure and consequent liability for damages did not entitle owners of property on Grand avenue, who did not claim that their assessments were unreasonable, to maintain an action in which the city of New York was the sole party defendant, to have the assessments canceled and annulled and to restrain the defendant from taking any proceedings to collect the same.

APPEAL by the plaintiff, The Astoria Heights Land Company, in behalf of itself and such other persons and corporations similarly situated, etc., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Queens on the 18th day of October, 1902, upon the report of a referee dismissing the complaint upon the merits.

*Hector M. Hitchings* [*Lynn W. Thompson* with him on the brief], for the appellant.

*George L. Sterling*, for the respondent.

Judgment affirmed, with costs, upon the opinion of HAMILTON ODELL, Esq., referee.

GOODRICH, P. J., BARTLETT, HIRSCHBERG, JENKS and HOOKER, JJ., concurred.

The following is the opinion of HAMILTON ODELL, Esq., referee:

HAMILTON ODELL, Referee:

The relief demanded in this action is that certain assessments laid upon plaintiffs' property in Long Island City in 1892 be declared illegal and void, and that the defendant be enjoined from collecting the same and from imposing any penalty for the non-payment thereof, and from laying any assessment upon the plaintiffs' property for the improvement of Grand avenue in (former) Long Island City. The action is a novel one, and arises out of facts narrated below.

Chapter 514 of the Laws of 1890 is entitled "An act to improve portions of Grand avenue and Main street in Long Island City," viz., "that portion of Grand avenue extending from its junction with Steinway avenue westerly to its junction with Main street, and that portion of Main street extending from its junction with Fulton street westerly to its junction with the Boulevard." It permitted any three owners of property fronting upon said portions of said avenue and street to make application to the mayor of the city for the appointment of three commissioners, having first given public notice of their intention so to do, and the mayor was required to appoint such commissioners, called "Grand avenue improvement commissioners," who were empowered and directed "to open, straighten, widen, and to improve by grading, regulating, sewering, paving, curbing, laying crosswalks, constructing sewers, culverts, basins, waterways and making approaches at street intersections, on said streets, or to make any one or more of such improvements if they shall deem it unnecessary for the public interest to make

them all." They were authorized to apply to the court for the appointment of commissioners of estimate and assessment; they were required to advertise for bids for work and material, and to award contracts to the lowest responsible bidders, and by section 7 of the act it was provided that "the cost, or approximate cost, of such improvements, as estimated or ascertained by said commissioners, shall be certified by them to the commissioners of estimate and assessment as soon as practicable after their appointment." The expenses attending the authorized improvements were to be met in the first instance by the issuance by the commissioners of certificates of indebtedness to be known as "Grand avenue and Main street improvement certificates" which should not exceed in amount "the par value of two hundred thousand dollars." They were to be signed by the commissioners, or a majority of them, and countersigned by the treasurer of Long Island City, and might be issued directly in payment of such improvements and expenses, or be sold or negotiated to obtain money to pay therefor, or to pay interest on outstanding certificates, and all moneys realized by the sale thereof were to be forthwith deposited with the treasurer and receiver of taxes of said city. They were to be payable to bearer, were to bear five per cent interest, were to be receivable at all times at par and accrued interest in payment of assessments authorized by the act, and were to show upon their face that they were issued under the provisions of said act. It was provided that upon receiving from the Grand avenue commissioners their certificate of the cost, or approximate cost, of the improvement, the commissioners of estimate and assessment should "proceed to open, widen and straighten and improve, as hereby authorized, said streets, or such section or sections thereof as said (Grand avenue) commissioners may from time to time determine upon, and to assess therefor and for the cost of such improvements as so certified," and that such assessments when confirmed should be a lien upon the property assessed, and various powers were conferred upon the said Grand avenue commissioners, and upon the said commissioners of estimate and assessment, and upon the courts — "to the end that said streets may be opened, widened, straightened and improved as herein directed, and that a just and valid assessment may be levied and collected therefor, so that the entire costs, charges and expenses of such opening, widening,

straightening and improvement may be defrayed out of and with the proceeds of such assessment, without any cost or expense to the city at large." Section 9 of the act declared that " all moneys received by said treasurer in payment of such assessments, or interest thereon, shall be placed to the credit of the fund to be known as the ' Grand avenue and Main street improvement fund,' and shall be kept separate and apart from all other moneys in his hands; and no part thereof shall ever be expended by him except in payment of the interest or for the purchase or redemption of the principal of said Grand avenue and Main street improvement certificates." All assessments not paid within three months should bear interest at the rate of ten per cent; no warrants should be required for the collection of any assessment, or for the sale of any lands for the non-payment of the assessment or interest; land upon which there should be three years' interest unpaid on the first day of July in any year, or upon which any such assessment or interest should remain unpaid at the expiration of ten years after such assessment should have been confirmed, etc., " shall, without any action or legislation on the part of the common council, or any other body, be advertised and sold for the payment of such unpaid interest or assessment, or both, as the case may be, and such sale or sales shall be made by the treasurer and receiver of taxes of said city, or by such other officer, if any, as shall then be authorized and empowered by law to sell lands in said city for non-payment of city taxes."

The act above referred to became a law on June 5, 1890, and on June tenth the mayor was petitioned to appoint commissioners. It is either proved or admitted that in all the steps taken to carry into effect the purposes of the statute the provisions of the statute were followed and obeyed. The regularity of the proceedings is not questioned. The commissioners were appointed and duly qualified; they entered upon the duties assumed by them; they procured the appointment of commissioners of estimate and assessment, who also qualified; they certified to such commissioners the cost, or approximate cost, of the proposed improvements; they entered into a single contract for the entire work; they issued, for value, the full amount of certificates of indebtedness authorized by the act; the commissioners of estimate and assessment made assessments for

benefits and awards for damages; the court duly confirmed their action; the contractor proceeded with the work and prosecuted it until the spring of 1893, when he was notified to stop by the Grand avenue commissioners, as the certificates and their proceeds were exhausted. At that time much the larger part of the work had been completed. The sewer had been built; the streets had been regulated and graded; the curbing and guttering had been done, with the exception of about one block; the work on Main street was substantially finished; seven or eight blocks on Grand avenue had not been paved; the sidewalks were not flagged for a distance of about 2,000 feet. The improvement has never been completed. It remains as the contractor left it. The testimony is that the cost of completion would be about $20,500. Whether a part of Grand avenue can be comfortably used and what the effect of its unfinished condition has been upon the marketability and value of adjacent property are matters about which witnesses are at odds.

I agree with the learned counsel to the corporation that no liability was imposed upon Long Island City by anything that was done under the act of 1890, or by any failure of the Grand avenue commissioners to complete the improvements which the act authorized and which they undertook to make. The work was not instituted by the city; the city had no control over it, nor over the commissioners to whom the entire direction and details of the work were committed by the statute; it was not to be done at the city's expense, but at the expense of the owners of land in the locality to be directly benefited; the commissioners were to provide moneys with which to make the improvements by the issuance of certificates of indebtedness which were not, and did not purport to be, obligations of the city; moneys received from the sale of such certificates did not become the moneys of the city; moneys received in payment of assessments did not become the moneys of the city, usable for city purposes, but constituted a special fund for the payment of the certificates to "be kept separate and apart from all other moneys" and to be applied only to that single purpose. No power was granted to the city, and no duty laid upon it, by any provision of the act; therefore, the city could not be made liable for neglect or non-performance. *Conrad* v. *Trustees of Ithaca* (16 N. Y. 158), as I read it, is not an authority to the contrary.

In 1893 an act* was passed entitled "An act to create a general improvement commission and provide for certain improvements in the highways, streets, avenues, boulevards and public places in Long Island City." The commission was to consist of the commissioner of public works and the two aldermen at large in Long Island City and two resident freeholders to be appointed by the mayor. Various and extensive and exclusive powers were conferred upon these commissioners, some of which might be exercised at their pleasure, others only on the petition of a majority of the owners of property fronting on the street or avenue or place to be improved. By section 6 of the act it was provided that "for the purpose of paying the expenses incurred in making said improvements, the mayor and common council of Long Island City," shall, and they are hereby authorized, upon the requisition of said general improvement commissioners, to prepare and issue bonds of said city to be known as 'General Improvement Bonds of Long Island City,' and shall show on their face that they are issued under the provisions of this act and the improvement for which they are issued." Such bonds were to be signed by the mayor and city clerk, and attested by the city treasurer, and were to be sealed with the city's seal and sold by the treasurer under the direction of the mayor. No assessments for any improvement could be made until after such improvement had been completed. By section 10, "All commissions, boards or bodies for the improvement of streets, avenues and public places in Long Island City heretofore created" (including the board of Grand avenue commissioners) "who shall not have completed the duties for which they were created, and whose entire work and improvement shall not be finally completed on or before December one, eighteen hundred and ninety-three, shall on December one, eighteen hundred and ninety-three, abate and be abolished, and the terms of office of each commissions and commissioners shall on that day expire, and each of said commissions, boards or bodies shall forthwith turn over to the general improvement commission created by this act all their plant, contracts, books," etc., "and said general improvement commission shall thereupon proceed to complete the said improvements then unfinished by said former commissions or boards, under and agreeably to the provisions of this act."

---

* Chap. 644.

It has been decided that warrants drawn by this board of general improvement commissioners on the treasurer of Long Island City and unpaid on the 1st day of January, 1898, when chapter 378 of the Laws of 1897 went into effect, became, by force of the provisions of the 1st section of that chapter, obligations of the new city of New York. (*Koelesch* v. *City of New York*, 34 App. Div. 98.)

When, on the 1st of December, 1893, the Grand avenue improvement commission ceased to exist, the work of improving portions of the avenue and Main street was unfinished. It had been prosecuted well on towards completion and until the commissioners were without means to prosecute it further. The duty of completing it was plainly laid upon their successor, the general improvement commission, which was directed to complete it "under and agreeably to the provisions of" the act of 1893, and which, therefore, had power to raise the funds necessary for that purpose by a requisition upon the mayor and council for "general improvement bonds." The language of the statute is mandatory, and any party in interest could have compelled the commission to proceed and complete the work. But the commission did not move, and the property owners did nothing to make it move. Main street and Grand avenue are to-day in the same condition that they were in when the contractor withdrew from the work early in 1893. The net amount of the assessments laid for the redemption of the certificates of indebtedness was $200,881.03. Of this amount $98,311.84 have been paid, and $102,569.19 have not been paid. The entire proceeds of the certificates were expended by the Grand avenue commissioners in making the improvements authorized by the act under which they were appointed and in paying expenses and damages incidental thereto.

The testimony makes it plain, I think, that the plaintiffs have suffered some damage by reason of the failure of the general improvement commission to complete the work on Grand avenue authorized by the act of 1890. For the defaults of that commission this defendant is liable. The question, therefore, is — if the plaintiffs are entitled to relief, can it be awarded in this action?

The purposes of the action are to have the assessments laid upon the plaintiffs' property declared to be illegal and void, and to have the same "cancelled and annulled," and to perpetually restrain the defendant from taking any proceeding to collect the same. This

relief is demanded upon the ground that the assessments are void, because in violation of the 5th and 14th amendments of the Federal Constitution and of section 6 of article 1 of the Constitution of the State of New York, and upon a further ground which is set forth in the 20th paragraph of the complaint as follows : " That the corporation The City of Long Island City and the Grand Avenue Improvement Commissioners, the General Improvement Commissioners and the defendant in this action, by and through the aforesaid acts, deeds and proceedings, entered into a contract with the plaintiff and the other property owners within the said district, that they and each of them, in consideration of the said assessments and the provisions of the laws with reference to the lien of the same upon the lands assessed and to the method and means of collecting the same, would faithfully, honestly, and without undue delay, fully construct and build said Grand Avenue according to said maps, profiles, plans and specifications, and would throw the same open to public travel and traffic, and would enable this plaintiff and the other said property owners to reap and obtain the full benefits and value of said improvements, and that defendant and its predecessors has wholly failed to keep and perform and carry out its contract as hereinbefore set out." In my judgment the facts do not support either of these contentions.

It is admitted that the act of 1890 was a valid act, and that all the proceedings taken under it by the Grand avenue commissioners were strictly regular. In making the authorized improvements they were limited to an expenditure of $200,000, for which amount they had power to issue certificates of indebtedness. As required by the act, they certified to the commissioners of estimate and assessments the cost, or approximate cost, of said improvements, and these latter commissioners laid the assessments which are now complained of. It is not charged that the assessments were in any respect unreasonable or unfair. On the contrary, it is alleged in the complaint that " the amount assessed against the lands of this plaintiff, over and above the amount awarded to it for lands taken in and by the report of said commissioners, was a just, proper and fair amount." It is also alleged that, in proceedings duly taken, the report of the commissioners and their awards for damages and assessments for benefits were in all respects ratified and confirmed by

an order of the County Court of the county of Queens. That the assessments when confirmed were legal and valid is not, and cannot be, disputed. They were levied by lawful authority, in a lawful manner and for a lawful purpose. No constitutional right of any property owner was invaded or disturbed by any step taken under the act of 1890. But the plaintiffs say there was a contract. Concede that there was — it was not made with the original plaintiff, the Astoria Heights Company, which was not in existence until 1894, and which took its lands subject to the lien of the assessments. But passing this, there was no contract that the cost of the Grand avenue and Main street improvements should not exceed the amount of the assessments, or that the entire work should be completed with the certificates of indebtedness which the commissioners were authorized to issue. If there was a contract made with any of these plaintiffs, it was made by the Grand avenue commissioners, who were specially authorized by the act of 1890, and who had entire control and direction of the work and who procured the assessments to be levied. It cannot be said that in accepting office the commissioners engaged to do more than to honestly and diligently discharge the duties imposed upon them by the act and prosecute the work of improving Grand avenue and Main street as far as the means at their disposal would permit. This was the extent of any contract obligations which they assumed. They were bound to act discreetly, and to use their best judgment, in order that they might not undertake more than they would be able to accomplish with the $200,000 of certificates to which they were restricted. They were guilty of no fault or imprudence in accepting and acting upon the estimate of their engineer, whose competency is not questioned. But whatever contract between the Grand avenue commissioners and the property owners the law may imply, and however the commissioners may have failed to perform, the consequences of their failure cannot, in my judgment, be visited upon this defendant, nor can any relief be granted against this defendant by reason of anything done or not done by them. So we come to the act of 1893.

When this act was passed the situation was that the Grand avenue and Main street improvements had come to a standstill. The commissioners had made and disposed of all the certificates of indebted-

ness ($200,000) which the act of 1890 authorized them to issue. All of them, in one way or another, had gone into the work. A large portion of them had been paid to the contractor; some had been sold; some had been used to meet the " incidental expenses," as the statute permitted. It is not claimed, I think, that the several parties to whom they were issued did not take them for value and in good faith. It must be assumed that they took them relying upon the assurance of the statute that they would be redeemed out of assessments upon property along the line of the improvement. To these assessments the plaintiffs as property owners must be deemed to have assented. They are all bound by the 16th paragraph of the complaint of the Astoria Company. But, although the means at the command of the commissioners were exhausted, the work was not completed, and the state of a portion of Grand avenue was " worse than the first." Further legislation was necessary. The result was the act of 1893. This act made it the duty of the general improvement commissioners to complete what the Grand avenue commissioners had left unfinished. This was to be done by the use of Long Island City bonds, to be issued on the requisition of the general improvement commissioners, and after the work was completed the cost of it was to be assessed upon the "lots or parcels of land benefited by said improvement." In the case of Koelesch, above cited, the Appellate Division approved the finding of the trial court that "on January 1, 1898, the defendant the City of New York, by virtue of chapter 378 of the Laws of 1897, became the successor corporation in law and in fact of the said corporation the city of Long Island City and of the general improvement commission of Long Island City, with all their lawful rights and powers and subject to all their lawful obligations." The learned court also affirmed the proposition that "where a public improvement is made under the auspices of a municipal corporation, where the fund for the payment of the same is to be derived from an assessment against the property benefited, no primary obligation against the municipality is created"—but that "where the municipality has neglected to perform the duties imposed by law" it becomes directly liable to a party aggrieved. The reasons for the rule are stated with great clearness in *Beard* v. *City of Brooklyn* (31 Barb. 142). Now, the general improvement commission did not obey the mandate of the act of

1893 ; nor has this defendant, upon which the duty of completing the Grand avenue improvement has descended.  For any damages which the plaintiffs have sustained through the neglect or default of the general improvement commission or of this defendant, this defendant is liable.  But have they any other remedy than an action for damages ?  Does the default of the parties charged by the act of 1893 with the duty of completing the improvement of Grand avenue relieve the plaintiffs' property from liability for assessments lawfully laid to pay for the work done by the Grand avenue commission ?  Has the court any power, in the absence of the certificate holders, to destroy the fund provided by the statute for the redemption of the certificates, and on the faith of which the certificates were negotiated and the means procured with which the work authorized by the statute was begun and prosecuted almost to completion ?  For reasons stated or suggested above, I think that each of these questions should be answered in the negative.

There should be judgment dismissing the complaint.