## LEWIS v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. July 7, 1905.)

1. MUNICIPAL CORPORATIONS—IMPLIED LIABILITIES—SUPPORT OF NATIONAL GUARD.

    A municipal corporation is, in the absence of statute, under no obligation to pay for supplies furnished to a national guard armory located therein.

2. SAME—STATUTORY LIABILITY—COMPLIANCE WITH STATUTE.

    In order to hold the city of New York liable for supplies furnished to a national guard armory located therein, section 134 of the Military Code (Laws 1898, p. 563, c. 212, as amended by Laws 1901, p. 843, c. 314), prescribing the mode of contracting for armory supplies, must be strictly complied with.

3. SAME—NECESSITY OF ADVERTISEMENT.

    Military Code, § 134 (Laws 1898, p. 563, c. 212, as amended by Laws 1901, p. 843, c. 314), construed with New York City Charter (Laws 1901, p. 645, c. 466) § 1565, vests in an armory board the control of armories in the city of New York, and requires such board to prepare for incorporation in the annual budget an estimate of the necessary expenses for main-

taining the armories. The amounts appropriated are to be expended pursuant to contracts let, after due advertisement, to the lowest bidder, who is required to give adequate security for the faithful performance of the same, except that, in case of emergency, repairs at an expense not exceeding $1,000 may be contracted for without competition. *Held*, that a contract to supply coal to an armory, made by private negotiation with the secretary of the armory board, and not pursuant to advertisement and competitive bidding, imposes no obligation on the city to pay for coal furnished thereunder.

Appeal from Trial Term, New York County.

Action by Samuel Lewis against the city of New York. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before O'BRIEN, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

T. Connoly, for appellant.

L. L. Kellogg, for respondent.

INGRAHAM, J.  Coal being needed for the various armories in the city of New York in the winter of 1903, and the armory board having made efforts to procure coal without success, in consequence of a strike that had existed, the plaintiff, at the request of the secretary of the armory board, delivered to the board the following communication:

"New York, December 18th, 1902.

"The Armory Board of the City of New York, Mr. John P. Gustaveson, Secretary—Dear Sir:  In answer to your request of December 15th, 1902, in regard to furnishing coal to the different Armories, I hereby propose and agree, subject to your acceptance to furnish pea coal, size No. 1, to such Armories as you may name for and at the price of Nine dollars ($9.00), per gross ton delivered alongside of any dock within the New York Harbor towing limits, and can guarantee delivery within three days from date of order.

"In event of your acceptance will allow you five lay days to discharge the cargo of coal and in event of detention longer than this period at dock, the captain will be entitled to a demurrage charge of $5.00 per day after five days from reporting day; you to pay extra towing if the boat is to be shifted from its original consignment.

"Yours truly,                                    Samuel Lewis."

In answer to this communication, Mr. Gustaveson, the secretary of the armory board, gave to the plaintiff, various orders for coal, which are substantially alike, one of which is as follows:

"The Armory Board.

"Secretary's Office, 280 Broadway,

"Telephone 2115 Franklin.

"New York, Jany. 2nd, 1903.

"Samuel Lewis, 126 Pearl St., Manhattan:  Please furnish between 30 and 35 Gross Tons No. 1 Pea Coal for Troop 'C' Armory and deliver same at dock designated by Mr. Emerson, Coal Inspector, as per your proposal of December 18th, 1902, for and on account of The Armory Board, and send bill in duplicate and this order, and the delivery receipt attached, to the office of the Secretary, 280 Broadway.

"I certify to the necessity of the above work or supplies, and that the expenditure thereof has been duly authorized and appropriated.

"[Signed]                                    John P. Gustaveson,

"Secretary."

In pursuance of this order the plaintiff furnished coal to various armories, which was received and used to heat them, between December 31, 1902, and January 23, 1903, costing, at the price named by plaintiff, $2,606.76. None of the various lots of coal thus furnished exceeded $1,000 in amount. Bills were presented to the city for the coal delivered to each armory, and attached to each bill was a certificate that the account had been examined, and was believed to be correct; that the prices charged were just and reasonable, and that the said articles had been or would be used for and applied to the service; and that the payment of the amount of said account would not exceed the unexpended balance of the sum duly appropriated by law for the purpose thereof by the members of the armory board. The comptroller refused to pay these bills upon the ground that the coal was not furnished in pursuance of a contract made as required by the Military Code, whereupon the plaintiff brought this action.

The armories of the city of New York are under the control of an armory board provided for by the Military Code (chapter 212, p. 508, of the Laws of 1898, as amended by section 134 of chapter 314, p. 843, of the Laws of 1901). This board consisted of the mayor; two senior ranking officers, of or below the grade of Brigadier General, in command of troops of the National Guard quartered in the city of New York; the president of the department of taxes and assessments; and the commissioner of public buildings, lighting, and supplies. By section 1565 of the charter (chapter 466, p. 645, of the Laws of 1901), the president of the board of aldermen was substituted for the commissioner of public buildings, and he was a member of the armory board. Section 134 of the Military Code provides as follows:

"In the city of New York the applications of commanding officers of regiments, battalions, squadrons, troops, batteries or signal corps, for suitable armories, and for the furnishing thereof when first erected, and for alterations and enlargements of armories, * * * shall be made to a board herein termed the armory board, and to consist of the mayor, the two senior ranking officers of or below the grade of Brigadier-General, in command of troops of the National Guard quartered in said city, the president of the department of taxes and assessments, and the commissioner of public buildings, lighting and supplies. * * * The commanding officer of each organization of the active militia quartered in the city of New York shall, before the first day of September in each year, prepare and submit to the armory board an itemized estimate of the necessary expenditures to be made during the ensuing year for repairs to and furnishing of armories and utensils, materials and supplies to be furnished by said city. On or before the twentieth day of September in each year the armory board shall revise said estimate and determine the amount necessary to be expended for the purposes aforesaid in the ensuing year. Such determination shall be made in detail specifying as separate items the amounts to be expended on each armory and for each organization for repairs, furnishing utensils, supplies and other expenditures to be made by said city, and said board shall thereupon and before October first certify the amounts so fixed to the commissioner of public buildings, lighting and supplies of said city, who shall include said amounts as determined in detail by said board in and present the same to the board of estimate and apportionment as part of his departmental estimates for the ensuing year, and the said board of estimate and apportionment and the municipal assembly shall include said amounts as determined in detail as aforesaid, in the final budget for the ensuing year. The amounts so appropriated shall

be expended on the armories and for the organizations for which the same were respectively appropriated by and under the direction of the commissioner of public buildings, lighting and supplies, who shall, from time to time, as may be necessary, advertise in the City Record and the corporation newspapers, for not less than ten days, for all utensils, supplies, work, labor and materials, and shall award contracts for the same to the lowest bidder, who shall give adequate security for the faithful performance of such contracts, except that, in case of an emergency, said commissioner may cause repairs immediately required to be done without calling for competition, at an expense not exceeding one thousand dollars in any one instance. No payment shall be made by the comptroller from the appropriation aforesaid, except as follows: In the case of supplies, upon the written approval of the claim by the commanding officer of the organization receiving the supplies; and in the case of expenditures upon an armory for whatsoever purpose made, upon like approval by the ranking line officer commanding an organization quartered therein."

By section 1565 of the charter (chapter 466, p. 645, of the Laws of 1901):

"All powers and duties relating to the construction, repairs and maintenance of and to public armories in the city of New York, and to the purchase of supplies therefor, so far as the same have heretofore been conferred upon the commissioner of public buildings, lighting and supplies by chapter 212 of the Laws of 1898 and known as 'The Military Code' are hereby devolved upon the armory board having jurisdiction within the city of New York, as in said Military Code provided. The powers and duties heretofore exercised by the commissioner of public buildings, lighting and supplies as a member of said armory board are hereby devolved upon the president of the board of aldermen, who shall be a member of said armory board."

Reading these two provisions together, the amounts appropriated by the board of estimate and apportionment and the municipal assembly were to be expended on the armories and the organizations for which the same were appropriated by and under the direction of the armory board, who were required, from time to time, as should be necessary, to advertise for not less than 10 days in the City Record and the corporation newspapers "for all utensils, supplies, work, labor and materials, and shall award contracts for the same to the lowest bidder, who shall give adequate security for the faithful performance of such contracts, except that, in case of an emergency, said commissioner may cause repairs immediately required to be done without calling for competition, at an expense not exceeding one thousand dollars in any one instance"; and the amount called for by the contracts made in pursuance of this authority conferred by the Legislature upon the armory board for the benefit of the National Guard of the state of New York were to be paid by the comptroller of the city of New York out of the moneys appropriated for the particular armories as required by the provisions of this act. The expenditures here required are not strictly for a municipal purpose, or for carrying on the municipal government. The fact that these armories were supplied with coal or other supplies would impose no obligation upon the city of New York to pay for them, except where the statute expressly imposed such an obligation. There is no provision of law, except that before cited, which authorizes such an expenditure of the money of the city, or imposes upon the city a liability to pay for supplies fur-

nished to armories; and, to thus impose a liability upon the city, the provisions of section 134 of the Military Code must be strictly complied with. There is no proof that the armory board advertised for the coal furnished by the plaintiff; nor was there any contract made by the armory board, as a board, to supply this coal. The plaintiff wrote a letter to the board, offering to supply it, and the secretary of the board ordered the coal; but it is not claimed that the provision as to advertisements for bids, or making of a contract with the lowest bidder in pursuance of such advertisement, was complied with. All through the section to which attention has been called the distinction is taken between repairs to the armories and supplies furnished to the armories. The armory board undoubtedly had power, in case of an accident which required immediate repair to an armory building, to make a contract for such repairs without calling for competition, but this power was given to the board only in case repairs were immediately required. Certainly the supply for coal for heating the armories so as to make them comfortable for those using them has no relation to repairs, whether immediately required or not; and the power of the armory board to expend any of the various amounts appropriated for "utensils, supplies, work, labor and materials," without a contract based upon a public letting, is confined to repairs immediately required; and no expenditure is authorized by the city of New York, and no obligation is imposed upon the city to pay for any supplies, except such as are furnished under a contract based upon an advertisement, and that contract must, by the provisions of the statute, be awarded to the lowest bidder. It is settled in this court that no recovery can be had against the city of New York upon such a claim unless the provisions of the statute have been strictly complied with. Walton v. The Mayor, 26 App. Div. 76, 49 N. Y. Supp. 615; Keane v. The City of New York, 88 App. Div. 542, 85 N. Y. Supp. 130. It follows that the plaintiff was not entitled to recover for these supplies furnished to the armories for the benefit of the state.

The judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.