(114 App. Div. 555)

## HORGAN & SLATTERY v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. July 12, 1906.)

1. MUNICIPAL CORPORATIONS—BUILDINGS—ARMORY BOARD—POWERS.
   The armory board, as constituted under Laws 1898, p. 563, c. 212, § 134, had no authority to bind the city by an indebtedness incurred for architect's fees until the board had been authorized to incur such indebtedness by resolution of the commissioners of the sinking fund.

2. SAME—CONTRACTS—COMPETITIVE BIDS—ARCHITECT'S SERVICES.
   In the construction of an armory it is not necessary that a contract for the rendition of services as an architect be let by competitive bidding.

3. SAME—FORM OF CONTRACT.
   A contract between the armory board and an architect for the rendition of services by the latter, devising plans for an armory, was not required to be in writing.

4. CONTRACTS—FAILURE TO PERFORM—RIGHT TO COMPENSATION.
   Where an architect contracted with the armory board to draft plans for the construction of an armory which should not cost more than a certain sum, the architect was not entitled to recover the contract price for services in making plans for a building which could not be erected for the stipulated sum.

5. MUNICIPAL CORPORATIONS—ARMORY BOARD—ARCHITECT'S PLANS—ACCEPTANCE.
   Where an architect contracted with the armory board to draft plans for an armory which could be constructed for a certain sum, the board could not accept the plans prior to the time when it was determined by bids under the plans whether or not the building could be constructed in accordance therewith for the sum stipulated.

6. SAME—FAILURE TO PERFORM—REQUEST FOR FURTHER PERFORMANCE.
   Where an architect contracted with the armory board to make plans for an armory building which could be erected for a stipulated sum, it was not the duty of the board to request further plans after it became apparent that the building could not be erected for the stipulated sum according to the plans furnished.

7. WORK AND LABOR—EFFECT OF EXPRESS CONTRACT.
   Where an architect contracted with the armory board to draft plans for a building which could be constructed for a certain sum, and after

the plans had been accepted by the board it was found that the building could not be built for the sum stipulated, which was afterwards materially increased, and new plans obtained from other architects, the architect who drafted the first plans was entitled to recover the reasonable value of the work performed in making the plans.

[Ed. Note.—for cases in point, see vol. 50, Cent. Dig. Witnesses, § 27.]

. O'Brien, P. J., and Patterson, J., dissenting.

Appeal from Trial Term, New York County.

Action by Horgan & Slattery against the city of New York. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, LAUGHLIN, and HOUGHTON, JJ.

Terence Farley, for appellant.

Augustus Van Wyck, for respondent.

HOUGHTON, J.  The plaintiff is a corporation engaged in the business of making plans and specifications and superintending the erection of buildings as architect. Prior to the 25th day of October, 1900, a site had been duly selected for the erection of the Sixty-Ninth Regiment Armory, between Twenty-Fifth and Twenty-Sixth streets, on Lexington avenue, in the city of New York. The armory board of that city, consisting at that time of .the mayor, two senior ranking officers of or below the grade of brigadier general in command of troops of the National Guard quartered in the City of New York, the president of the department of taxes and assessments, and the commissioner of public buildings, lighting, and supplies (Military Code, § 134, Laws 1898, p. 563, c. 212) by resolution directed the plaintiff to prepare plans and specifications for such armory building so proposed to be erected, with estimated cost thereof. Under this employment preliminary plans and estimates were furnished and approved by resolution of that board on the 23d day of January, 1901, and an appropriation of $500,000 was asked therefor from the commissioners of the sinking fund of the city of New York, whose final approval and action was necessary for the raising of funds therefor. On the 8th of March following, the commissioners of the sinking fund, by resolution, authorized the armory commissioners or board "to take such steps as may be necessary to enter into a contract for the erection of. an armory for the 69th Regiment N. G. N. Y. * * * And for the purpose of providing means for the payment thereof, including architect's fees and all incidental expenses connected therewith," the sum of $450,000, was appropriated. Thereafter, and on the 3d day of April following, the armory board, by resolution forwarded to the plaintiff, directed it to prepare "detailed plans and specifications in accordance with the plan which has been adopted by the armory board and approved by the commissioners of the sinking fund for an armory building for the 69th Regiment," and directed that they be submitted for approval to a committee of that board appointed therefor. The approval by the commissioners of the sinking fund referred to in this resolution was the approval by the resolution of March 8th,. fixing the cost at, and making an appropriation of, $450,000.

The testimony discloses that from the 3d of April to about the middle cf June following a large part of the force of plaintiff's office was engaged in making such plans, and during the summer and fall following the principal part of the specifications were completed. After these plans and specifications had been so completed and approved, on the 19th of November, 1901, by resolution, the armory board directed the entering into with plaintiff of a written contract for the preparation of such plans and specifications, and the supervision of the construction of such armory building. This was done, and by such contract it was provided that the plaintiff should receive 5 per cent. upon the cost of the erection of the building, such commission being subdivided, 1 per cent. for preliminary studies and sketches, 2½ per cent. for completed plans and general working drawings and specifications and detail, and the balance for further working plans and supervision of erection; this subdivision being in case of the abandonment or suspension of the work. By this contract it was provided that the plans and specifications for the purpose of enabling accurate and reliable bids or estimates should be completed on or before the 15th day of October, 1901, a date prior to that of the contract itself. The total cost of the building, including architect's fees, it was provided, should "be kept well within the sum of $450,000." On these plans, specifications, and details, bids were asked. None were received within the $450,000, all being in excess thereof, and ranging from $666,394, the lowest, to $744,394, the highest, exclusive of architect's fees. By resolution on the 14th day of January, 1902, all of these bids were rejected because in excess of the appropriation. Subsequently, and on the 22d day of July following, by resolution the armory board rejected the plans of the plaintiff, terminated its employment as architect, and recommended that $100,000 be added to the appropriation, and invited competitive plans from certain architects therefor, and the building was subsequently erected at an increased cost, under the plans of other architects. The written contract with plaintiff provided that, if the plans and specifications were not satisfactory, the plaintiff would revise and correct the same to conform to suggested requirements, and the plaintiff proved that it had never been requested to revise the plans submitted, so that the building would cost a less amount to erect. This written contract contained the appropriate certificate of the commissioners and comptroller as to appropriation and unexpended balance applicable to pay the moneys provided thereby, but no other contract of employment of plaintiff complied with this requirement.

The plaintiff seeks to compel the city to pay for the plans and specifications so furnished, as well as damages for breach of the contract. The first cause of action alleged is for the 2½ per cent. on the proposed cost of the building for the plans and specifications, and the second cause of action is for damages for breach of the contract by wrongful discharge. The complaint states that the original hiring was October 25, 1900, but on the trial the plaintiff was allowed to amend by adding appropriate allegations as to the making of the written contract of November 19, 1901. The plaintiff recovered 2½ per cent. upon $450,-000 for the plans and specifications furnished, amounting, with interest

added, to $11,835.10, as well as $5,000 damages for wrongful discharge and refusal to permit it to complete its contract to superintend the erection of the building, and do the work necessary to earn the balance of the 5 per cent. stipulated.

The defendant appeals from this judgment, asserting that the armory board had no power to make the contract of October 25, 1900, and that plaintiff can recover for no work performed prior to the written contract of November 19, 1901, even after the resolutions of March 8th and April 3d; and further asserts that the written contract executed in November was valid, or that the verbal contract arising out of the resolution of April 3d was good; that plaintiff failed to perform either of them by furnishing plans and specifications according to which the building could be erected within the stipulated sum of $450,000.

We think it must be held, under the doctrine of this court enunciated in Lewis v. City of New York, 106 App. Div. 454, 94 N. Y. Supp. 710, and Keane v. City of New York, 88 App. Div. 542, 85 N. Y. Supp. 130, and Walton v. Mayor, 26 App. Div. 76, 49 N. Y. Supp. 615, that the armory board had no power to incur an indebtedness for architect's fees which the city became liable to pay until it had been authorized to incur such indebtedness by resolution of the commissioners of the sinking fund. The resolution of those commissioners, passed March 8, 1901, did give the armory board authority to employ plaintiff, which authority they exercised by their resolution of April 3d following, directing plaintiff to prepare detailed plans and specifications for the erection of the proposed armory. It is only for services performed by plaintiff after this time that the city is liable, if it is liable at all. It was not necessary to let the contract for the preparation of plans and specifications for the proposed armory by competitive bidding. The services required scientific knowledge and skill, and that character of service need not be obtained by bids. Peterson v. Mayor, etc., of N. Y., 17 N. Y. 449, 453. Nor was it necessary that the armory board enter into a written contract with the plaintiff for the performance of such services. That might be done by resolution and subsequent direction. The plans and specifications were prepared after the 3d of April, and before the written contract, which was not a necessity. If the plaintiff substantially performed its contract, which we think was to furnish plans and specifications for an armory which could be erected within the sum of $450,000, then it is entitled to recover therefor the customary price, which was proven to be 2½ per cent. upon the cost of the building. This, however, the plaintiff did not do. The resolution of March 8th, appropriating the money, and giving authority to the armory board to proceed and hire plaintiff, limited the cost of the building to $450,000. Plaintiff says it did not know of this limitation until the written contract of November, after the plans and specifications had been furnished. The resolution was a matter of public record, and the plaintiff was dealing with a municipality, and should have ascertained the limitation of cost. Besides, plaintiff's chief architect, prior to April 3d, in discussing the preliminary plans with the chairman of the armory board committee, to whom he announced that the proposed armory could not be erected short of $600,000, was told by such chair-

man that the board would never allow more than $500,000 at the out-side for its erection. This was actual notice of the limitation, which plaintiff's plans and specifications far exceeded. The bids for erection were the final test of the cost, and all of them exceeded the limitation by nearly $200,000. If there was a limitation within which plaintiff must reasonably come, and within which it was bound to come, the excess cost was so great that it cannot be said that plaintiff substantially performed its contract.

An architect employed to furnish plans and specifications for the erection of a building is entitled to remuneration therefor if they are made in accordance with the directions of the owner. He cannot recover, however, where the owner stipulates that the plans and specifications shall be for a building not to cost over a specified amount, if the plans and specifications made are for a building substantially exceeding that sum. 6 Cyc. 31; Maack v. Schneider, 57 Mo. App. 431; Feltham v. Sharp, 25 S. E. 619, 99 Ga. 260; Ada St. M. E. Church v. Garnsey, 66 Ill. 132. The plaintiff failed to bring itself within this proper and salutary rule, and therefore should not have been permitted to recover under its first cause of action. There cannot be said to have been an acceptance of the plans and specifications by the armory board, notwithstanding they did not meet the restriction as to cost of erection. That fact could not be determined until the bids were received, and it was thus found what the cost would be; and it is quite doubtful if the armory board would have the power to bind the city by the acceptance of plans not in conformity with the contract, and the cost stipulated by the commissioners appropriating the money. If any other reason were needed for the reversal of the judgment, it is found in the charge of the court, which was a substantial direction of a verdict for the 2½ per cent.; the defendant being permitted to except to whatever the court said on that subject.

As to the second cause of action, it is manifest that the plaintiff in no sense showed such a substantial performance of its contract as to entitle it to damages for breach of hiring. It furnished no plans and specifications from which an armory costing within $450,000 could be erected, nor did it conform to the plans already made to a building costing within that sum. The armory board, therefore, on disclosure of the cost as shown by the bids, had the right to reject the plans, and to dispense with the plaintiff's services and terminate the contract. Here, too, the court erred in charging the jury that there was no ground for the discharge of the plaintiff, to which the defendant excepted.

The plaintiff complains that it was not asked to alter the plans, so that the cost of erecting the building would come within the stipulated amount. It was for the plaintiff to perform its contract, and to show that it has done so, before it asks damages for breach by the other party. It is quite evident that the plaintiff performed a large amount of work for which it would be just that it should receive some compensation, and we have endeavored to find some ground upon which plaintiff could recover the fair value of the work and labor which it performed. The resolution of March 8th empowered the armory board to employ an architect. By the resolution of April 3d that board employed plain-

tiff. It was necessary for the armory board to obtain accurate information with respect to the kind of armory that should be erected. Preliminary sketches might and might not be accurate with respect to disclosing the cost. Plaintiff did a large amount of work in elaborating the ideas of the armory board with respect to the proposed armory, and finally by its labors demonstrated that the building could not be erected within the sum provided. The necessity for a larger appropriation was finally recognized by the commissioners of the sinking fund, and they increased it, and the armory in the end was erected at about the cost called· for by plaintiff's plans. The work performed by the plaintiff was of value to the armory board, and thus to the city, in the final determination as to the style and character of the armory. Equitably it would seem that the plaintiff can and should be permitted ·to recover the value of these services performed up to the time of receipt of the bids, not, however, upon any percentage as to cost of erection, but upon a quantum meruit for the actual value of the services in fact performed. It is probable that this sum ought to be limited to the usual charge for preliminary sketches, which would be only 1 per cent. We do not mean to hold that the plaintiff is entitled absolutely to recover the 2½ per cent. upon the cost of erection, or to the proposed cost of erection, or a sum equal to that amount; but if it can recover at all, it should be permitted to recover what it paid out to its clerks and assistants in preparing the plans and specifications, together with a reasonable compensation for the time spent by its chief architects and the advice which they gave to the armory board.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event.

McLAUGHLIN and LAUGHLIN, JJ., concur.

O'BRIEN, P. J. (dissenting). The question of want of power and authority in the armory board to employ the plaintiff as architect, .which, in effect, amounts to the plea of ultra vires, was not raised by the answer, and therefore the defendant was precluded from asserting it upon· the trial or upon this appeal. McNulty v. City of New York, 168 N. Y. 117, 61 N. E. 111; Griesa v. Mass. Benevolent Ass'n (Sup.) 15 N. Y. Supp. 71, affirmed in 133 N. Y. 619, 30 N. E. 1146. But if we regard it as within the issues we think it is not sustained with respect to the services rendered prior to July 22, 1902, when the armory board adopted the resolution terminating the services of the plaintiff. It was necessary for that board to have the preliminary plans, and it is not disputed that they employed the plaintiff to prepare and furnish them, and that the plaintiff did so. In order to constitute a legal and binding contract upon the city, this employment should be approved and authorized by the sinking fund commissioners. It does appear that, acting upon the request of the armory board, the said sinking fund commissioners on March 8, 1901, adopted a resolution authorizing the armory board to take the necessary steps to enter into a contract for the erection of an armory, and for the purpose of providing means for the payment therefor, including architect's fees, authorized the issue of corporate stock of the defendant to the amount of $450,000. It was

following the adoption of this resolution that the armory board directed the plaintiff to prepare the detailed plans and specifications in accordance with the plans which had been adopted by the armory board and approved by the commissioners of the sinking fund, which plans and specifications were made the basis for inviting the bids which were subsequently received. Subsequently, and before the opening of bids or proposals, the armory board at its meeting on November 19, 1901, passed a resolution that the chairman be authorized to execute a contract on behalf of the board for the services of the plaintiff as architect. In accordance therewith a contract bearing date the 23d day of November, and which was executed by the board on the 27th of November following, was made and approved by the corporation counsel, in which was recited the resolution of March 8, 1901, conferring upon the armory board the authority to make such contract. It is true that the plaintiff had made the preliminary plans and the subsequent detailed plans and specifications before this contract was actually executed, but it is obvious from the resolutions of the armory board and the dealings between that board and the plaintiff that the contract itself was intended to cover the services which the plaintiff had then performed, and there is no suggestion that any other or further plans were to be prepared. In other words, it was a formal contract in writing, by which the plaintiff was employed, and which, recognizing the work that had been performed, was, in effect, a ratification and a promise to pay for the same. For the value of all such services the plaintiff, in my opinion, is entitled to recover. It was impossible without the work it performed for the armory board to determine just what the building would cost, and it was the part of prudence to ascertain this fact in order that it might be made the basis for the application which was necessary to the sinking fund commissioners for the appropriation of the necessary amount to complete the building. Had these plans been adopted and the building been constructed accordingly, I would entertain no doubt as to the written contract of November being sufficient to bind the defendant. It appears, however, that having ascertained that the amount necessary would be larger than the sum which the sinking fund commissioners were at first inclined to allow, it was within their province to determine whether or not they would use the plans, and I do not see that the plaintiff has any legal claim for services other than those rendered prior to the termination of its contract by the resolution of the armory board. But for such prior services the city is legally bound to pay the value thereof, and I think it would be manifestly unjust and unfair to have employed and accepted the services of the plaintiff, and to have availed itself of the information which it was necessary that it should have in order to proceed intelligently, to now claim that the plaintiff is not entitled to any compensation. By the action of the armory board in not giving the plaintiff an opportunity, when it obtained the increased appropriation, to furnish additional plans, I think the parties were placed in exactly the same position as in the case of an abandonment or suspension of the work, and for that contingency the contract itself provides what the compensation should be. This would entitle it, as charged by the learned trial judge, to 2½ per

cent. upon the cost of the building, which was to be at least $450,000, and this amount, $11,250, with interest, the plaintiff should recover.

Upon the second cause of action for damages for the breach I concur with Mr. Justice HOUGHTON, and for the reasons assigned by him I think that, upon the plaintiff stipulating to reduce the verdict to the amount suggested, that the judgment, as so modified, should be affirmed; otherwise, that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

PATTERSON, J., concurs.