## MORIARTY v. CITY OF NEW YORK.

### (Supreme Court, Appellate Term. May 15, 1908.)

**1. MILITIA—MUNICIPAL CORPORATIONS—IMPLIED LIABILITY—MAINTENANCE OF·
ARMORIES.**

The maintenance of armories is not one of the duties of a municipal
government, and to fasten liability upon the city for such expenditures
the provisions of· the Military Code, which alone imposes it, must be
strictly complied with.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Militia, § 42½.]

**2. STATUTES—CONSTRUCTION.**

While a practical interpretation may be given to a statute of doubtful
or ambiguous meaning in accordance with a uniform construction there-
of by public officials for many years, yet, where there is no doubt as to·
the meaning of an act, a practice in violation of the plain provisions of.
the statute will not be recognized.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Statutes, § 296.]

**3. MUNICIPAL CORPORATIONS—ACTIONS—DEFENSES—POWER OF CITY TO ASSERT·
IRREGULARITIES.**

While the courts have not been inclined to favor defenses, based on
mere irregularities and informalities, to honest demands in meritorious
cases, and a city may be estopped from asserting its own irregularities
in the exercise of its powers, where innocent parties have parted with·
their property and expended money in absolute reliance that all legal
formalities have been observed, yet, where the defense goes to the ques-
tion of power to create a liability, a different situation is presented,
and a city is not liable on a contract or order made or issued in abso-·
lute defiance of statute.

**4. SAME—ACTIONS FOR REPAIRS FOR ARMORY—EVIDENCE—SUFFICIENCY.**

Evidence *held* insufficient to show that certain repairs to armories.
claimed for by plaintiff were ordered in the manner required by Mili-
tary Code, Laws 1898, p. 563, c. 212, § 134, as amended by Laws 1901, p..
843, c. 314, and Laws 1904, p. 856, c. 321, even in an emergency case.

Giegerich, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Third Dis-
trict.

Action by John L. Moriarty against the city of New York for re--
pairs on certain armories. From a judgment for plaintiff, defendant.
appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and GIEGERICH and·
GREENBAUM, JJ.

Francis K. Pendleton (Theodore Connoly and Thomas F. Noonan,.
of counsel), for appellant.

Alfred Beekman (Charles Goldzier, of counsel), for respondent.

GREENBAUM, J. Upon the ground that emergencies existed re--
quiring three specific items of repairs to be done upon the armories of
the Twenty-Second Regiment and Squadron A, the secretary of the·

Armory Board gave written orders to plaintiff to make these repairs. For the recovery of the alleged reasonable value of the repairs and the materials incidentally employed therein, this action is brought against the city of New York. Plaintiff's claim is resisted upon the ground that the alleged repairs were not authorized in accordance with the provisions of the Military Code.

The maintenance of armories is not one of the duties of a municipal government. To fasten liability upon the city for such expenditures the provisions of the Military Code, which alone imposes it, must be strictly complied with. Lewis v. City of N. Y., 106 App. Div. 454, 457, 94 N. Y. Supp. 710. The special provisions of the Military Code applicable to the facts in this case are set forth in the Lewis Case, 106 App. Div., at pages 456–458, 94 N. Y. Supp., at pages 711–713, and it is sufficient for the purposes of the present discussion to state that "in case of emergency" the armory board is not required "to award contracts to the lowest bidder after advertising," but "may cause repairs immediately required to be done without calling for competition at an expense not exceeding one thousand dollars in any one instance." The proofs in this case fail to show that the Armory Board, which alone is authorized to award contracts or to cause repairs to be done, either directed them to be done or had any knowledge that they were done. In the case of one of the three claims made by the plaintiff, what purport to be the signatures of three members of the Armory Board appear upon a voucher produced from the comptroller's office; but the genuineness of the signatures was not even attempted to be proved, and in addition to this the voucher on its face shows that the amount of $70.40, the original sum claimed, had been reduced by the claimant to $60.40. In the case of the other two claims, not even the purported signature of any member of the Armory Board appears upon any of the vouchers or documents in evidence.

The claims of the plaintiff rest upon the action of the secretary of the Armory Board, who it was shown was its executive officer. What powers were conferred upon this secretary is not disclosed, unless we may regard as evidence of his authority proof that was accepted by the trial justice that the secretary customarily determined what repairs were to be done and issued orders to whomsoever he desired for the making of the repairs. A practical interpretation may be given to a statute of doubtful or ambiguous meaning in accordance with a uniform construction thereof by public officials for many years; but, where there is not the slightest doubt as to the meaning of an act, the court would be greatly derelict if it recognized a practice that was in violation of the plain provisions of the statute. A practice such as was testified to was not of itself evidence of authority by the Armory Board to the secretary to order the repairs.

It may be assumed that the repairs were of an emergent character, and, being under $1,000 in amount, could properly have been ordered without competition. The courts have not been inclined to favor "defenses to honest demands based upon mere irregularities and informalities," and in meritorious cases the city has been estopped from availing itself of its own irregularities in the exercise of its powers, where innocent parties have parted with their property and expended

their money in absolute reliance that all legal formalities had been observed. Moore v. Mayor, 73 N. Y. 238, 247, 29 Am. Rep. 134. But where the defense goes to the question of power a different situation is presented than one of mere irregularity.

Our attention has not been directed to a scrap of testimony in the case, other than that to which we have adverted, as to the custom of the Armory Board, from which we may infer that the board either knew of or sanctioned the practice testified to, or had any official knowledge of the work in question, or in any manner approved of or ratified the action of the secretary. Upon such a state of the proofs there seems to be no alternative but to reverse the judgment.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.

GILDERSLEEVE, P. J., concurs.

GIEGERICH, J. (dissenting). The action is brought to recover for certain repair work done by the plaintiff about the Twenty-Second Regiment Armory and the armory of Squadron A, both located in the borough of Manhattan, city of New York. One item, amounting to $92.85, was for repairs to a motor used to operate an exhaust fan to carry off the smoke from an indoor rifle range. There was evidence that the motor needed to be repaired at once, as the range was to be used on the night of the day on which the repairs were ordered. Another item, amounting to $97.74, was for work done and material furnished in repairing burnt-out and broken electric light wires, which were loose and dangling and liable to start a fire in the hay and straw and other inflammable material in the armory of Squadron A. The third item, amounting to $70.40, was for work and materials furnished in repairing a heavy lantern, weighing some 300 pounds, which hung suspended in a dangerous condition over the street, being liable to fall at the time when the order to make it secure was given to the plaintiff.

No question is raised on the appeal as to the value or necessity of the work done; the claim of the defense being that the work was not ordered in the manner required by statute, and consequently that there can be no recovery, either on the theory of contract or of quantum meruit. Section 134 of the Military Code (Laws 1898, p. 563, c. 212, as amended by chapter 314, p. 843, Laws 1901, and chapter 321, p. 856, Laws 1904), provides the manner in which the city of New York may be made liable, among other things, for repairs upon armory buildings; further providing for advertising for bids for such repairs and the awarding of contracts for the same to the lowest bidders, containing, however, this additional provision, namely:

"Except that in case of an emergency said commissioner [of public buildings, lighting, and supplies] may cause repairs immediately required to be done without calling for competition at an expense not exceeding $1,000 in any one instance."

Section 1565 of the revised charter (chapter 466, p. 645, Laws 1901), provides that:

"All powers and duties relating to the construction, repairs and maintenance of and to public armories in the city of New York, and to the purchase of sup-

plies therefor, so far as the same have heretofore been conferred upon the commissioner of public buildings, lighting and supplies by chapter two hundred and twelve of the Laws of eighteen hundred and ninety-eight, known as the 'Military Code,' are hereby devolved upon the armory board having jurisdiction within the city of New York, as in said Military Code provided. The powers and duties heretofore exercised by the commissioner of public buildings, lighting and supplies as a member of said armory board are hereby devolved upon the president of the board of aldermen, who shall be a member of said armory board."

In Lewis v. City of New York, 106 App. Div. 454, 459, 94 N. Y. S. 710, 714, it was said:

"The armory board undoubtedly had power, in case of an accident which required immediate repair to an armory building, to make a contract for such repairs without calling for competition."

On behalf of the appellant it is argued that the repairs in the present instance were not of an emergent character; but upon this issue I think the trial justice properly decided in favor of the plaintiff. There is a serious question, however, whether the orders were issued in the manner contemplated by the statutes just referred to. The power formerly vested in the commissioner of public buildings, lighting, and supplies to "cause repairs immediately required to be done without calling for competition" in case of an emergency, as above shown, has now been vested in the Armory Board, which, by section 134 above quoted, is made to consist of the mayor, the president of the board of aldermen, the two ranking officers of or below the grade of brigadier general in command of the troops of the National Guard quartered in this city, and the president of the department of taxes and assessments. It was shown upon the trial that the Armory Board had by resolution passed on April 11, 1902, employed a secretary to be the executive officer of the board, which resolution was still operative, and that the practice followed in regard to emergency work had been for the person in charge of the building to either telephone or send a letter in the form of a requisition that work of a designated character was required. Thereupon an inspector was sent to verify the report that the work was of an emergent character, and if it was found to be such a contractor was called up by the secretary and given an order to do the necessary work, and that such orders were given by the secretary, and that there had never been an instance where the Armory Board had been called together and a resolution adopted in the case of repairs costing less than $1,000.

The contention of the appellant appears to be that the issuance of the orders through the secretary of the Armory board was not a compliance with the statute, and that the board itself should have acted specifically in each instance as an emergency arose. Considering the fact that the board includes the mayor and other high city officers, whose time is so likely to be absorbed in other and more important matters, I do not think it should be held that the Legislature intended in cases of comparatively trivial expense, such as are now under consideration, that repairs urgently needed should be left undone until the board could be gotten together for action. Under the practice that has been followed for a number of years, the board has established

and authorized a method of attending to such matters which seems to be as well devised and guarded as is possible where things have to be done speedily. The fact that the bills have been required to be certified by the ranking line officers commanding the organizations quartered in the armories affected, after their approval by the armory inspector, is a further safeguard and assurance against abuse in the method of procedure established. Recognizing and giving due weight to the facts, adverted to in Lewis v. City of New York, 106 App. Div. 454, 94 N. Y. Supp. 710, that expenditures of the kind now under consideration are not strictly for a municipal purpose, or for carrying on the municipal government, and that the provisions of the Military Code must be strictly complied with in order to impose a liability upon the city, I am nevertheless of the opinion that under the circumstances here shown it should be held that the board did cause the repairs to be made within the true intent of the statute.

The defendant contends that the allowance of interest upon the claims in suit was error. The plaintiff upon the trial rested his case upon a quantum meruit, and adduced evidence tending to show the reasonable value of the repair work in suit. In White v. Miller, 78 N. Y. 393, 399, 34 Am. Rep. 544, the court, after a full discussion of the leading authorities, said:

"The cases last cited tend to show that where an account for services, or for goods sold and delivered, which has become due and is payable in money, although not strictly liquidated, is presented to the debtor and payment demanded, the debtor is put in default and interest is set running, and that, if not demanded before, the commencement of the suit is a sufficient demand to set interest running from that date."

This statement was accepted in enunciating the current rule on the subject in De Carricarti v. Blanco, 121 N. Y. 230, 233, 24 N. E. 284. There the action was brought to recover a balance alleged to be due for the reasonable value of services rendered and performed by the plaintiff, and, through Gray, J., the court, in adverting to the White Case, said (page 233 of 121 N. Y., page 285 of 24 N. E.):

"I think the rule thus intimated by the learned judge in that case is a sound one and commends itself to our judgment in such a case as this. Here the claim for compensation for services was not only unliquidated, but the legal right of the plaintiff to recover anything for those services was contested by the defendant. The amount was absolutely uncertain which he should have, if he was entitled to anything, and the demand in his complaint rested on quantum meruit. Hence I think it cannot be said that the defendant was in default toward the plaintiff in the discharge of any indebtedness, until, at least, the plaintiff had made a demand upon him after the close of his services and in such wise as to charge him with notice of his deficiency."

The doctrine of the foregoing case was reaffirmed and applied in Sweeny v. City of New York, 173 N. Y. 414, 66 N. E. 101, and O'Keeffe v. City of New York, 176 N. Y. 297, 68 N. E. 588, in which it was held that in an action to recover for labor or materials furnished to the city interest could only run from the date of the filing of the claim with the comptroller. The rule of the De Carricarti Case was also followed in the recent case of Fleming v. Jacob, 57 Misc. Rep. 372, 103 N. Y. Supp. 209, which is directly in point. That action was brought to recover on a quantum meruit for work and materials, and

Mr. Justice Mills held that, although the plaintiff's claim was upon a quantum meruit and was liquidated,

—"still he was, as matter of law, entitled to interest upon the amount found to be due upon the claim, such interest to be computed from the date when payment of the claim was demanded from the defendant. Sweeny v. City of New York, 173 N. Y. 414, 66 N. E. 101; De Carricarti v. Blanco, 121 N. Y. 230, 24 N. E. 284."

As the full amounts of the respective claims were allowed by the trial justice, the case of Excelsior Terra Cotta Co. v. Harde, 90 App. Div. 4, 8, 85 N. Y. Supp. 732, which holds that if a demand is necessary it must be for the amount due, and if it includes any item not recoverable the demand is illegal and interest cannot be allowed, does not apply.

The case of Beckwith v. City of New York, 121 App. Div. 462, 106 N. Y. Supp. 175, cited by the defendant's counsel, is entirely different in its facts from the present one. There the action was brought to recover prospective profits claimed to have been lost in consequence of the city's refusal to permit the plaintiff to perform his contract with it to furnish and lay water mains in certain streets and for various expenses he was put to in consequence of such breach. Interest was allowed from the date of filing the claim. This was held to be improper, because the amount due was not capable of being ascertained by mere computation; the court observing that the ascertainment of prospective profits on such a contract as the one there involved depended on many elements other than established market values. We have no such situation in the case at bar, and under the authority of the cases cited above the plaintiff is entitled to interest from the time he demanded payment from the comptroller of the city of New York, even though recovery was sought upon the theory of quantum meruit, rather than for the contract price.

Interest was allowed from December, 1905, about which time the claims were certified by the Armory Board inspector and by the ranking line officer commanding the organization quartered in the armory at which such repairs were made, and computation from that date was permitted by the trial justice upon the theory that such papers must be presumed to have come into the possession of the comptroller at the time of such approval. Such presumption, however, cannot be indulged in, for the reason that the claim dated January 4, 1907, was not filed with the comptroller until January 9, 1907. As the claim was against the city, and not against the Armory Board, interest should, therefore, have only been allowed from the date last mentioned, and not from December, 1905, as was done by the trial justice.

The judgment should therefore be modified, by deducting $16.20, interest from December, 1905, to January 9, 1907, thus reducing the judgment to $296.79 damages and costs, and, as so modified, affirmed, with costs.