JOSEPH H. PIERCE and Another, Plaintiffs, *v.* THE BOARD OF EDUCATION OF UNION FREE SCHOOL DISTRICT No. 12 OF THE TOWNS OF RIDGEWAY AND SHELBY, ORLEANS COUNTY, NEW YORK, Defendant.

Supreme Court, Orleans County, July 16, 1925.

Schools — liability of union free school district for professional services rendered by architects — district may, under Education Law, § 310, contract for such services — architects bound to know that right of recovery is conditioned upon cost coming within appropriation voted, under Education Law, § 314 — district may abandon plans furnished and is not liable to architects where lowest bid received was forty-seven per cent higher than their estimate — district liable under evidence for services rendered by architects in preparation of preliminary plans.

Under section 310 of the Education Law, a union free school district has authority to contract for the personal services of architects in the preparation of plans and specifications for proposed school buildings.

Plaintiffs are not entitled to recover for professional services rendered by them as architects under an agreement to furnish plans and specifications for the construction of school buildings for the defendant union free school district, where it appears that in submitting plans and specifications for said buildings plaintiffs estimated the cost thereof to be $95,000; that in reliance upon plaintiffs' estimate, the school district voted an appropriation of $125,000 to cover the cost of said buildings, but subsequently abandoned the use of plaintiffs' plans and specifications on the submission of bids showing the cost of construction to be in excess of the appropriation, since the plaintiffs were bound to know that the erection of the buildings and their right to recover under their contract with the school district were conditioned upon the cost and expense of the erection of the buildings coming within the appropriation, under the provisions of section 314 of the Education Law.

Moreover, the school district cannot be made liable, by reason of the fact that it abandoned the plans and specifications on plaintiffs' failure to submit an accurate estimate of the cost of construction, where the sum of the lowest bids received was forty-seven per cent higher than plaintiffs' estimate of the cost of the buildings, and the district, under section 314 of the Education Law, was forced to forego the project.

However, the defendant is liable for the services rendered by the plaintiffs in the preparation of preliminary sketches for a contemplated building program, since the evidence indicates that the plaintiffs rendered services pursuant to a contract of employment.

ACTION by architects against a union free school district to recover for professional services.

*Stanchfield, Collin, Lovell & Sayles* [*Halsey Sayles* and *Pierre W. Evans* of counsel], for the plaintiffs.

*Milton J. Whedon, Daniel J. Kenefick* and *Charles P. Fronchot,* for the defendant.

EDWARD R. O'MALLEY, J.:

Plaintiffs are architects and sue to recover for professional services rendered pursuant to an agreement for furnishing preliminary studies, general plans and specifications for the construction of two school buildings in 1916, and for preparing preliminary studies and sketches for two school buildings in 1919. The defendant is a municipal corporation existing under the Education Law of the State. It is vested with the power and it is its duty to purchase sites and additions thereto for school houses and to construct the same when designated by a meeting of the school district. (Education Law, § 310, subd. 6, as amd. by Laws of 1913, chap. 221.)

It was stipulated by the attorneys for the respective parties that a trial by jury be waived and that the issues of fact be tried by the court.

Little, if any, dispute exists as to the facts upon which plaintiffs base their claim for services in 1916. The negotiations leading up to the making of the contract began December 17, 1915, when plaintiffs wrote the defendant asking for the privilege of furnishing architectural services for the proposed school building. Between December 17, 1915, and March 13, 1916, considerable correspondence passed between the parties regarding the proposed employment, the character and size of the proposed buildings and the types of construction of the same. During the same period one of the plaintiffs attended one or more meetings of the defendant and advised with the members of the board on the general subject, and members of the defendant examined and inspected some of the work done, and which was being done by the plaintiffs.

On March 13, 1916, at a regular meeting, the defendant passed the following resolution: "That the firm of Pierce & Bickford be retained as architects for the construction of the proposed school buildings, at the rate of 5% of the cost thereof, together with railroad and hotel expenses, in accordance with the correspondence had with the president, and that this tender of employment be made subject to the proposition to build being carried."

Thereafter plaintiffs made and delivered preliminary studies, general drawings, details and specifications for the proposed buildings covered by the resolution. On April 21, 1916, plaintiffs wrote the defendant that they believed that the grade school buildings, as provided for in the plans, etc., could be built within the amount of $20,000, and on May fifth, following, plaintiffs wrote that the combination junior high school and grade school building could be built for about $75,000.

On May 23, 1916, defendant wrote the plaintiffs:

" We expect at a meeting of the Board of Education to be held next Monday night to pass the necessary resolutions for the purchase of a site and erection of school buildings as covered by the tentative plans submitted.

" So that there can be no possible mistake, we would like to have you give your close estimate as to the prospective cost of those buildings and also definite assurance that the architect's fees are covered by the estimate.

" The question at last night's meeting also came up as to whether you would give any assurance or guaranty in any way that your estimate would cover the cost. We would like to have you cover this question fully and clearly.　*　*　* "

On May twenty-fifth following, the plaintiffs answered the above inquiry as to the cost, as follows:

" *　*　*　It is impossible for any one, except a contractor, to guarantee the cost of a building. We are not in the contracting business, but we have never yet failed to produce a building within the amount of the appropriation, when we have known this amount in advance.

" We have taken into account the advance in price of many materials, and have allowed 12 and a fraction per cent more per cubic foot than the cost of the building at Tonawanda. This includes architects' fees.　*　*　* "

On June twenty-ninth following, the school district voted in favor of purchasing a certain site for a grade school and for the erection of a grade school building thereon and for the erection of the combination junior high school and grade school building, in accordance with the plans, etc. The proposition voted was as follows:

" *Resolved,* that the school district authorize the purchase or acquisition of and designate as a new site for a school building on Ensign and Elwood Avenues consisting of lots Nos. 66, 67, 68, 69, 70, 71, 72, on Ensign Avenue and 82, 83, 84, 85, 86, 87, 88 on Elwood Avenue, Medina, N. Y., according to map of the Meade tract on file in the Orleans County Clerk's Office and the erection thereon of an eight room six grade building substantially in accordance with the plans and specifications therefor on file with the Clerk of the district and also for the erection of a combination grade and junior high school building on the present Central school property, which building shall face Catherine Street and to be substantially in accordance with the plans and specifications therefor now on file with the Clerk of said district and raise therefor by tax upon the taxable property of the district the sum of $125,000 or so much thereof as may be necessary to be collected in annual

installments as provided by sections 467 and 480 of the Education Law."

Thereafter the defendant invited bids for the construction of the proposed buildings, and the sum of the lowest bids for the construction of the combination junior high and grade school building was $101,561.09, and the sum of the lowest bids for the grade school building was. $38,413, a total for both of $139,954.09. Thereafter the defendant abandoned the use of the plans and specifications, on the ground that the cost of the buildings, as shown by the lowest bids, was in excess of the estimated cost and of the appropriation voted by the school district. Plaintiffs now contend that they are entitled to three and one-half per cent on said sum of the lowest bids, or $4,899.09. Defendant denies liability under the agreement of 1916, upon the ground that there is no express authority given to the defendant by the Education Law to employ architects, and that the only power of the defendant to contract for such services was in connection with and incident to a building project duly adopted by a meeting of the school district, and that said power can be exercised only within the limits of the project as adopted and within the appropriation directed to be raised by taxes, by the resolution. Defendant further contends that plaintiffs were bound as a matter of law to know these limitations upon the power and authority of the defendant to contract for their services, and it was their duty to furnish plans and specifications to permit the building project to be carried out within the appropriation voted by the district, and that they failed to discharge that duty when they furnished plans, etc., which called for an expenditure exceeding the appropriation specified in the building project.

Plaintiffs contend that the action of the school district in voting for the building project was a designation of the buildings to be built, and that following said action it became the duty of the defendant, under the Education Law, to proceed with the building portion of the project, at least until it was demonstrated that the buildings could not be built within the appropriation; and further, that independent of any action of the district the defendant had implied authority to secure architectural services, as without architectural plans, etc., defendant could not make out its estimates of cost or invite bids.

It seems to be well settled that where plans are required for a building not to cost more than a certain sum, or are accepted on condition that it can be erected for a given amount, there can be no recovery by the architect unless the building can be erected for the sum named, or unless the increased cost is due to special

circumstances, or to a change of plans by direction of the owner. (5 C. J. 262.)

The following cases are cited as authority for the foregoing proposition: *Cooper* v. *City of Derby* (83 Conn. 40); *Bair* v. *School District* (94 Kans. 144); *Maack* v. *Schneider* (57 Mo. App. 431); *Feltman* v. *Sharp* (99 Ga. 260); *Ada St. M. E. Church* v. *Garnsey* (66 Ill. 132); *Williar* v. *Nagle* (109 Md. 75); *Hellmuth* v. *Benoist* (129 S. W. 257); *Graham* v. *Bell-Irving* (46 Wash. 607); *Horgan & Slattery* v. *City of New York* (114 App. Div. 555); *Lewis* v. *City of New York* (106 id. 454); *Keane* v. *City of New York* (88 id. 542); *Dudley* v. *Strain* (130 S. W. 778); Lloyd Law of Building & Buildings (§ 10); *Lord* v. *City of New York* (171 App. Div. 140). Also, see *Bernstein* v. *City of New York* (143 App. Div. 543).

In the instant case there was no express stipulation made by the defendant limiting the cost of the buildings to be constructed, but it is claimed that where the employer is a municipal corporation, as in the case at bar, such a provision is implied in the contract of employment, and this claim is based on the general rule of law that one dealing with the agent of a municipal corporation has no right to presume that the agent is acting within the line of his or its authority, and that it is the duty of one so dealing to ascertain the nature and extent of the agent's authority to contract, and that there were certain specific limitations in the Education Law on the defendant's authority and power to contract for the construction of school buildings, among which was that the expense of the buildings must be within the appropriation voted by the district and that plaintiffs were bound to know these limitations as a matter of law, and that in fact they did know of these express limitations.

In *McDonald* v. *Mayor* (68 N. Y. 23), Judge FOLGER says: " It is fundamental, that those seeking to deal with a municipal corporation through its officials, must take great care to learn the nature and extent of their power and authority " (citing *Hodges* v. *City of Buffalo*, 2 Den. 110; *Cornell* v. *Guilford*, 1 id. 510; *Lowell Five Cents Savings Bank* v. *Winchester*, 8 Allen, 109).

And the court further says: " * * * Could the plaintiff presume that it was the duty of the defendant to keep the Kingsbridge road in repair? No; he must look to its charter to learn of that duty. The same instrument would show him just how it must obtain the material to perform that duty."

In *Village of Fort Edward* v. *Fish* (156 N. Y. 363, 371), Judge VANN said: " The defendant was obliged, at his peril, to inquire

38

into the authority of the commissioners to make the contract and was bound to notice the limitation of their powers." (Citing *Supervisors of Rensselaer Co.* v. *Bates*, 17 N. Y. 242, 246; *McDonald* v. *Mayor, etc., supra; Smith* v. *City of Newburgh*, 77 N. Y. 130; Dillon on Mun. Corp. § 447.)

It has been repeatedly held that municipalities and other public bodies can act only in the way prescribed by their charters or acts of incorporation, and that there must be a compliance with the charter or other provisions of law, in order to charge a municipal corporation with liability. (*Keane* v. *City of New York*, 88 App. Div. 542; *Parr* v. *Village of Greenbush*, 72 N. Y. 463; *Francis* v. *City of Troy*, 74 id. 338; *Matter of Industrial Savings Bank*, 75 id. 388; *Smith* v. *City of Newburgh, supra; People ex rel. J. B. Lyon Co.* v. *McDonough*, 173 N. Y. 181.)

The resolution voted upon by the district expressly provided that the total cost of the sites and the buildings was not to exceed $125,000, and the plaintiffs were bound under the law to know that the erection of the buildings and their right to recover under their contract were conditioned on the expense coming within the appropriation. The bids submitted show that the costs would have exceeded the appropriation. The sum of the lowest bids received was forty-seven per cent higher than plaintiffs' estimate of the cost of the buildings. The result was that the defendant could not erect the buildings within the appropriation or the estimate given by the plaintiffs, or for a sum that would reasonably approximate the appropriation or the estimate. This being so, the defendant had no power to proceed with the building portion of the project.

Section 314 of the Education Law provides: " No board of education shall incur a district liability in excess of the amount appropriated by a district meeting unless such board is specially authorized by law to incur such liability."

The limitation contained in the resolution as to costs was binding on both the plaintiffs and the defendant, and I am of the opinion that all of the limitations upon the authority of the defendant to deal with the plaintiffs must be read into and made a part of the contract. If these conclusions are correct, the plaintiffs cannot recover for their services of 1916 because of a failure on their part to perform the contract. (*Horgan & Slattery* v. *City of New York, supra; Bernstein* v. *City of New York, supra; Lord* v. *City of New York, supra.*)

I am also of the opinion that the evidence clearly shows that the defendant accepted the plans, etc., on the condition that the buildings could be erected within the estimated cost furnished by

the plaintiffs, or at least for a sum that would reasonably approximate said estimate.

The resolution of employment recites that the hiring of plaintiffs was, among other things, " in accordance with the correspondence had  *  *  * ". and defendant's letter advising plaintiffs that they had been retained, recited that it was on the terms " proposed by you in the various letters we have received from you on the subject." Therefore, the resolution of employment does not constitute the entire contract and it will go without saying that a further duty of the plaintiff, not expressly stated in the resolution, was that they should make and furnish the defendant with estimates of the cost of the buildings. So that in construing the contract the resolution, the correspondence, and all representations or assurances made by the plaintiffs as to the cost, must be taken into consideration in determining what the conditions were under which the defendant accepted the plans.

On December 17, 1915, plaintiffs wrote the defendant stating the extent of their professional experience in planning and constructing school and other buildings of reinforced concrete construction, and that they had designed " the first school building of this type in the United States," and had done the engineering " upon more than 100 buildings of that type," costing " from $250,000 down; " and that the costs of these buildings are below the " costs of the same type  *  *  *  produced by any one else; " and we " do our own engineering and are not obliged to employ interested parties furnishing reinforcing on some patent system  *  *  *  which is controlled, as is often done, and where the owner does not have the benefit of open competition in getting materials; " and that their drawings were made so complete " in detail " and every member so carefully figured, the size of the steel, the number of bars and their location so shown that any intelligent contractor " can carry out the work and know just what is required of him before he submits his estimate." Plaintiffs furnished a list of some six school buildings which they then had under construction, together with the actual or estimated costs of each, and also a list of some twelve school buildings they had completed, and stated that the complete cost of the buildings mentioned varied from " 12  *  *  *  to 16 cents per cubic foot," the latter price " being charged by New York contractors near New York city under New York conditions." They also discouraged competitive bidding for the architectural work and stated that such competitive drawings " are often submitted on the estimates which cannot be carried through for twice the amount of the appropriation," and that faulty engineering and imperfect

drawings often lead to bids being submitted "which are far above what they should be to get a proper result."

On January eighteenth, following, plaintiffs wrote: "We have called your attention to the extreme low cost of fireproof construction as engineered by us, and the very satisfactory results which we have produced." On January twenty-fourth, following, plaintiffs wrote that if they knew the requirements of the proposed buildings they might show drawings of schools or buildings, "* * * so that you would be able to get a very accurate idea of the money necessary to expend, in order to get the accommodations which you require." And they state in their letter of February 8, 1916: "Please read carefully the part of our schedule, which is under ' architectural responsibility.' We state clearly that we are responsible for any operations we undertake, for the correctness of our drawings, and our engineering. If you will inquire at the Second National Bank in this City or at the Chemung County Trust Company, or any client who has had dealings with us, you will find that we are, as a firm and as individuals, responsible for any operations we undertake. Our specifications are so made as to call for the results. * * * "

These representations and assurances had to do with plaintiffs' extensive experience in constructing school houses of the type proposed, their standing as architectural engineers, the completeness of their mechanical drawings and the reliability of their specifications, and the accuracy of their estimates of costs.

The statements in plaintiffs' letter of May twenty-third heretofore referred to do not withdraw or modify any of the assurances or representations made in their letters of April twenty-first and of May fifth as to the estimated costs. Defendant was about to submit the proposition to the district, and took the precaution to ask the plaintiffs to again give "their close estimate of the prospective cost of the building," and asked if plaintiffs would give any "assurance" or "guarantee" that their estimates "would cover the cost." Plaintiffs answered that no one but a contractor could give a "guarantee" as to costs, but gave further assurance of the reliability of their estimates by stating "we have never yet failed to produce a building within the cost of the appropriation, when we have known the amount in advance." In this case they knew the total amount of the appropriation submitted to the district and that of that total the sum of $95,000 was to cover the cost of the buildings.

These facts clearly show that plaintiffs represented and assured the defendant of the correctness of the estimated costs, or at least that the cost would reasonably approximate the estimated cost,

and that defendant accepted the plans, etc., upon the condition that the buildings could be erected for the cost as estimated, or at least for a sum that would reasonably approximate the estimate. The defendant and its members were warranted in relying upon these representations and assurances that the plaintiffs were capable of accurately estimating the costs of the building portion of the project and that the estimate given was correct or reasonably so when they accepted the plans.

As said heretofore, the defendant's powers to build school houses or to buy sites existed only when authorized by the school district by a vote of the electorate whose duty it was to specify the amount to be expended for the project and provide for the levying of a tax to defray the expense of the same. The resolution of employment provides that " this tender of employment is made subject to the proposition to build being carried out." The mandate of the district was that not more than $125,000 could be expended, including the purchase of the site and the construction of the building. There is no dispute that the amount included for the buildings was the sum of $95,000. The approval of the proposition by the district meeting was a nullity, so far as giving authority to or imposing the duty upon the defendant to proceed with the building of the school houses at a cost of approximately $140,000.

The employment of the plaintiffs was on the condition that they performed their contract, which included the giving of an accurate or substantially an accurate estimate of the cost of the building. Plaintiffs failed in this respect and thereby failed to perform their contract, and defendant was within its legal right in abandoning the plans and specifications and in refusing to proceed.

In *Maack* v. *Schneider* (57 Mo. App. 431), the following is from the headnote: " If a person contracting with a builder for plans for a building of a specified cost and the building for which the plans are prepared will cost largely in excess of the limit, he is not liable for the contract price of the plans."

In *Feltham* v. *Sharp* (99 Ga. 260), it is held that under such conditions an architect is not entitled to his fee, unless the building can be erected at a cost " reasonably approximating that stated in such estimate," citing Lloyd Building & Buildings (§ 10).

In *Ada Street M. E. Church* v. *Garnsey* (66 Ill. 132), the following is found in the headnote: " Where various plans were drawn and presented for a church building, and that of the plaintiff was accepted by the defendants upon condition that the building on the plaintiff's plans could be built for a certain sum, and when it was ascertained that it could not be built for such sum the plans were rejected, and the evidence failed to show any promise to pay for

the plans: *Held*, that the plaintiff was not entitled to recover for making the plans."

In Lloyd Law of Building & Buildings (§ 10) it is said: " If the architect is given to understand that his plans are to be considered ' probationary ' he will have no cause of action unless they are accepted. * * *"

" Where he renders services conditionally, or undertakes a contract which he knows will be of no value whatever to his employer, he is not entitled to compensation."

One of the questions involved in the claim for services in 1919 is whether there was in fact a contract of employment. Defendant claims there was no contract and that if a contract was made it was a nullity, as the defendant had no authority to employ the plaintiffs unless pursuant to a vote of the district.

After receiving the bids in 1916 nothing more was done by the defendants until 1919. On March 25, 1919, plaintiff Bickford appeared before a special meeting of the defendant, when the following resolution was passed: " That Mr. Bickford be requested to go over the plans with Supt. Brown tomorrow, prepare rough set of plans embodying the features upon which they agree and submit the same to this Board together with estimate of the expense for further consideration."

The minutes of a special meeting of the defendant, held July 16, 1919, contain the following: " The meeting was called for the purpose of considering the matter of the submission of a proposition to the taxpayers for the erection of a junior high school building and a grade school building on the east side. A letter from the architects Pierce & Bickford giving an estimate for the junior high school building at $180,000.00 was read, and considerable discussion followed, and it was decided to let matters stand until definite figures were obtained from the architect as to the estimated cost of the east side building.

" Motion by Mr. Poler that the Clerk communicate with Pierce & Bickford as to their charges on the construction of buildings and ask for a proposition. Carried."

On July seventeenth, following, defendant wrote again regarding the cost of the high school and asked what the estimate covered and if it included plaintiffs' fees, and what the charge for the two buildings was to be, and whether that would include everything which plaintiffs claimed defendant owed them. A controversy then arose over the question of the charges for the services performed in 1916 and for the work of 1919, in the event plaintiffs were given the latter contract, and because of a disagreement on the matter, plaintiffs' services were terminated.

Plaintiffs seek to recover one per cent on the estimated cost of the school buildings of 1919 or the sum of $2,489. Plaintiffs make no claim that they were hired to do anything beyond the preparation of preliminary studies, etc. No proposition was submitted to the school district in 1919, and no bids were invited.

The evidence relating to the alleged employment in 1919, to the work done thereunder, and to the controversy over plaintiffs' charges, is to be found in plaintiffs' Exhibit " A."

The plaintiffs had considerable correspondence with the defendant and its superintendent of education during 1919, in relation to the dimensions and type of the buildings proposed under the new project. One of the plaintiffs attended meetings of the defendant down to September of that year, and plaintiffs prepared several preliminary sketches for the proposed buildings. No claim is made that plaintiffs' work in 1919 was unsatisfactory. The contractual relations were terminated, as stated heretofore, because of plaintiffs' insistence that they were entitled to be paid a substantial sum for the work done in 1916, together with the full five per cent on the cost of the buildings in 1919, in the event plaintiffs were employed.

Upon all the evidence, and especially on the resolution of March 25, 1919, I am of the opinion that the defendant employed the plaintiffs to prepare preliminary studies, etc., and that pursuant to said employment the plaintiffs rendered the services referred to. I am also of the opinion that the defendant had, under section 310 of the Education Law, the authority to contract with the plaintiffs for architectural services. (*People ex rel. Kiehm* v. *Bd. of Education,* 198 App. Div. 476.)

In the above case Mr. Justice HUBBS says (at p. 480): " Undoubtedly the board, having the power and authority to build a new building, had power and authority to employ architects to draw the necessary plans and to make the necessary estimates and specifications. Without such services the board could not make out its estimates of the cost of the proposed building.  *   *   * "

The estimated cost of the two buildings in 1919 was $262,000, which sum includes plaintiffs' fees. Deducting said fees, the balance is about $248,900. I, therefore, find that the plaintiffs' are entitled to recover one per cent on the last mentioned sum or $2,489, with interest, together with their actual disbursements incurred during their employment of that year.